UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

UNITED STATES OF AMERICA

                    Plaintiff,

              v.                                    Case No. _____

SCOTT P. CARTWRIGHT                       **COMPLAINT**
W10460 Kickhafer Road
New London, WI   54961

JACQUELINE J. CARTWRIGHT
W10460 Kickhafer Road
New London, WI   54961

RUSSELL W. CARTWRIGHT
N3514 Pamela Lane
New London, WI   54961

CAROL A. CARTWRIGHT
N3514 Pamela Lane
New London, WI   54961

GREENSTONE FARM CREDIT SERVICES, FLCA
280 South Main Street
Clintonville, WI   54929

CHS CAPITAL, LLC
c/o Corporation Service Company, Registered Agent
8040 Excelsior Drive, Suite 400
Madison, WI   53717

COFINA FINANCIAL, LLC (n/k/a CHS Capital)
P.O. Box 64949
St. Paul, MN   55164,

                    Defendants.

        Comes now the plaintiff, the United States of America, acting through the Farm Service

Agency, U.S. Department of Agriculture, by Matthew D. Krueger, United States Attorney for the

Eastern District of Wisconsin, and Carter B. Stewart, Assistant United States Attorney for said District and for its cause of action alleges that:

1.      This is a civil action brought by the United States of America under 28 U.S.C. § 1345 to foreclose upon chattel and real estate held by Defendants Scott P. Cartwright and Jacqueline J. Cartwright ("Cartwright's ").

2.      The Cartwright's have executed promissory notes, secured by mortgages upon real estate within the jurisdiction of this court.

3.      The Cartwright's have executed and delivered to plaintiff, acting through the Farm Service Agency, United States Department of Agriculture, the following promissory notes, secured by security agreements and mortgages upon real estate, within the jurisdiction of this court.

| DATE | AMOUNT | EXHIBIT (hereto annexed) |
|------|--------|--------------------------|
| September 4, 2012 | 300,000.00 | A |
| June 29, 2015 | 266,753.78 | B |
| June 9, 2016 | 50,000.00 | C |

4.      To secure said notes, the Cartwright's executed and delivered to plaintiff a security agreement dated September 4, 2012.   The Cartwright's subsequently executed a renewed security agreement on June 9, 2016, a copy of which is attached as Exhibit D.

5.      A financing statement and continuation statement was duly filed for the record:

| DATE | EXHIBIT (hereto annexed) |
|------|--------------------------|
| September 6, 2012 | E |
| August 1, 2017 | F |

6.      By virtue of said notes, security agreements, financing statement and continuation statement, plaintiff has a security interest in all farm products, crops, livestock, and farm equipment owned by the Cartwright's.   Said property includes, but is not limited to the property

described in the security agreement that is attached hereto as Exhibit D.

7. Said property is in the possession of the defendants, Scott P. and Jacqueline J. Cartwright, and is located at W10460 Kickhafer Road, New London, Wisconsin, 54961.

8. To further secure said notes, the Cartwright's executed and delivered to plaintiff the following duly recorded mortgages upon certain real estate within the jurisdiction of this court:

| DATE | EXHIBIT (hereto annexed) |
|------|--------------------------|
| September 4, 2012 | G |
| June 29, 2015 | H |
| June 9, 2016 | I |

9. Scott and Jacqueline Cartwright have failed to make the required payments towards the above debts and, therefore, have defaulted under the terms of the applicable loan instruments.

10. The Cartwright's being in default, plaintiff served upon them a Notice of Acceleration of Indebtedness and Demand for Payment, a copy of which is hereto annexed as Exhibit J.

11. The Cartwright's owe plaintiff under the provisions of the notes, mortgages, security agreements, financing statements and continuation statements, a balance of $286,252.34, as of February 23, 2019 with interest accruing thereafter at the daily rate of $10.0729. This amount is computed as follows: principal of $280,114.22, and interest of $6,138.12. A Statement of Account is attached hereto as Exhibit K.

12. GreenStone Farm Credit Services, purports to have a senior interest in the real property securing the Farm Service Agency's notes by virtue of a mortgage recorded in the

3

office of the Register of Deeds for Outagamie County on October 6, 1982 with Russell and Carol Cartwright as Document number 815440 and on June 5, 2007 with Russell and Carol Cartwright as Document number 17541689, amended on August 2, 2007 as Document number 1761831 in the original amount of $366,140.00.   These mortgages are superior to the Farm Service Agency mortgages recorded on June 12, 2012, July 6, 2015 and June 20, 2016.

13.     Russell and Carol Cartwright sold the real estate securing the mortgages with GreenStone Farm Credit Services in two separate land contracts to Scott Cartwright recorded in the office of the Register of Deeds for Outagamie County on January 7, 2008.   A copy of the land contracts are hereto annexed as Exhibits L and M.

14.     Scott Cartwright executed a Quit Claim Deed to Janice A. Young, formerly Janice A. Preisler, for a portion of real estate that secures the mortgages with GreenStone Farm Credit Services and with the Farm Service Agency.   The Quit Claim Deed was recorded with the Register of Deeds for Outagamie County as Document number 1834882 and attached hereto as Exhibit N.   This piece of real estate is currently identified as Tax Parcel Number 160-025002 and is not a part of this foreclosure action.

15.     The other defendants may have interests in the mortgaged premises but any such interests are junior and subordinate to the interests of the plaintiff.

WHEREFORE, plaintiff prays that an accounting be taken under the direction of this Court of what is due for principal and interest on the notes, security agreements, financing statements and continuation statements and mortgages, and that a decree be entered as follows:

(a)     That Scott P. and Jacqueline J. Cartwright pay to plaintiff $286,252.34 together with interest from February 23, 2019, at the rate of $10.729 per day computed as provided in the

notes, security agreements, financing statement, continuations statement and mortgages, up to the date on which the decree is entered, plus interest thereafter according to law, costs, disbursements, and expenses;

(b)     Or in default of such payment, that all legal right, title, and interest that the Cartwright's have in the property described in said mortgages, less than any property released and the property identified in the Quit Claim Deed to Janice A. Young, formerly Janice A. Preisler, be sold at public sale in accordance with 28 U.S.C. § 2001-2003, inclusive, and 28 U.S.C. § 2004 and that the amounts due to plaintiff and GreenStone Farm Credit Services be paid out of the proceeds of the sale pursuant to the lien priority of each mortgage;

(c)     That the interest the Cartwright's have in the property described in said security agreements be sold at a public or private sale in accordance with 28 U.S.C. § 2004 and that the amounts due to the plaintiff be paid out of the proceeds of the sale;

(d)     That the defendants and all persons claiming or who may claim by, from, or under them be absolutely barred and foreclosed from all rights and equity of redemption in the property;

(e)     That if the proceeds of the sales exceed the sum of money to be paid to plaintiff, any such excess be deposited with the Clerk of this Court subject to further orders of the Court;

(f)     For such other and further relief as is just.


Dated this 15th day of July, 2019.

MATTHEW D. KRUEGER
United States Attorney


By:    *s/Carter B. Stewart*

CARTER B. STEWART
Assistant United States Attorney
Wisconsin State Bar No. 1117543
Office of the United States Attorney
Federal Building, Room 530
517 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
Telephone: 414-297-1700
Fax: 414-297-4394
carter.stewart@usdoj.gov

6

Rescheduled - not pd
6/29/15

Form Approved - OMB No. 0560-0237
(See Page 3 for Privacy Act and Public Burden Statements.)

**FSA-2026**
(09-03-10)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

Position 2

## PROMISSORY NOTE

| 1. Name | 2. State | 3. County |
|---|---|---|
| SCOTT PAUL CARTWRIGHT JACO... ... CARTWRIGHT | WISCONSIN | OUTAGAMIE |

| 4 5 | 5. Fund Code 44 | 6. Loan Number 01 | 7. Date SEPTEMBER 4, 2012 |
|---|---|---|---|

| 8. TYPE OF ASSISTANCE D-OLT-REG-7 | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE:

☒ Initial loan ☐ Conservation easement ☐ Deferred payments

☐ Consolidation ☐ Rescheduling ☐ Debt write down

☐ Subsequent loan ☐ Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America Department of Agriculture, acting through the Farm Service Agency (Government), or its assigns, at its office in *(a)*   SHAWANO, WISCONSIN   or at such other place as the Government may later designate in writing, the principal sum of *(b)*  THREE HUNDRED THOUSAND AND NO HUNDREDS------------------------- --------------------------------  dollars *(c)* ($  300,000.00--------------------------- , plus interest on the unpaid principal balance at the **RATE** of *(d)*  ONE AND ONE-EIGHTH------------------------------------------- percent *(e)*  1.125--- %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)*  EIGHT (8) installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 10,222.00 | 1-1-2013 | $ 31,890.00 | 1-1-2014 |
| $ N/A | N/A | $ N/A | N/A |
| $ N/A | N/A | $ N/A | N/A |
| $ N/A | N/A | $ N/A | N/A |

and *(d)* $  31,890.00   thereafter on the *(e)* FIRST   of each *(f)* YEAR   until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)*  SEVEN (7)   years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

Initial SPC   Date 9/4/12
JC            9-4-12

# Exhibit A

13. Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14. Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15. Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16. Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17. If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

18. Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19. If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan.

Initial _S.P.C_   Date _9/4/12_
_J.C_               _9-4-12_

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

SCOTT PAUL CARTWRIGHT

JACQUELINE JEAN CARTWRIGHT

S.P.C

NOTE: The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

Form Approved - OMB No. 0560-0237
(See Page 3 for Privacy Act and Paperwork Reduction Act Statements.)

**FSA-2026**
(12-05-12)

**U.S. DEPARTMENT OF AGRICULTURE**
Farm Service Agency

Position 2

## PROMISSORY NOTE

| 1. Name SCOTT PAUL CARTWRIGHT JACQ~~___ __N__~~ CARTWRIGHT | 2. State WISCONSIN | 3. County OUTAGAMIE |
|---|---|---|

| 4. C: 58- | 5. Fund Code 44 | 6. Loan Number 01 TO 02 | 7. Date JUNE 29, 2015 |
|---|---|---|---|

| 8. TYPE OF ASSISTANCE | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE:

- [ ] Initial loan
- [ ] Conservation easement
- [ ] Deferred payments
- [ ] Consolidation
- [x] Rescheduling
- [ ] Debt write down
- [ ] Subsequent loan
- [ ] Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture ("Government"), or its assigns, at its office in *(a)*  SHAWANO, WISCONSIN  or at such other place as the Government may later designate in writing, the principal sum of *(b)*  TWO HUNDRED SIXTY SIX THOUSAND SEVEN HUNDRED FIFTY THREE AND 78/100----------------------  dollars *(c)* ($  266,753.78----------------------  , plus interest on the unpaid principal balance at the RATE of *(d)* ONE AND ONE EIGHTH------------------------------------ percent *(e)*  1.125  %) per annum.  If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address.  The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)* ~~16~~  15  *SPC*

installments as indicated  below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $ 19,426.00 | 01/01/2016 | $ N/A | N/A |
| $ N/A | N/A | $ N/A | N/A |
| $ N/A | N/A | $ N/A | N/A |
| $ N/A | N/A | $ N/A | N/A |

and *(d)* $  19,426.00  thereafter on the *(e)* FIRST  of each *(f)* YEAR  until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)*  15  years from the date of this note, and except that prepayments may be made as provided below.  The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government.  Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government.  Interest shall accrue on the amount of each advance from the actual date disbursed.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs ) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC  20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay).  USDA is an equal opportunity provider and employer.

Initial *SPC*  Date *6/29/15*

# Exhibit B

13.  Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14.  Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15.  Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower.  Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16.  Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17.  If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a)<br>FUND CODE/<br>LOAN NO. | (b)<br>FACE AMOUNT | (c)<br>INTEREST RATE | (d)<br>DATE<br>(MM-DD-YYYY) | (e)<br>ORIGINAL BORROWER | (f)<br>LAST INSTALL.<br>DUE<br>(MM-DD-YYYY) |
|---|---|---|---|---|---|
| 44-01 | $  300,000 | 1.125   % | 9-4-2012 | SCOTT PAUL CARTWRIGHT AND<br>JACQUELINE JEAN CARTWRIGHT | 9-4-2019 |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

18.  Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19.  If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial S.PC   Date 6/29/15
JC

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.

**Signature(s) As Described In State Supplement:**


_____
SCOTT PAUL CARTWRIGHT

_____
JACQUELINE JEAN CARTWRIGHT

NOTE: The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

*Form Approved - OMB No. 0560-0237*
*(See Page 3 for Privacy Act and Public Burden Statements.)*

**FSA-2026**
(12-05-12)

**U.S. DEPARTMENT OF AGRICULTURE**
Farm Service Agency

Position 2

## PROMISSORY NOTE

| 1. Name | 2. State | 3. County |
|---|---|---|
| CARTWRIGHT, SCOTT PAUL and CARTWRIGHT, JACQUELINE JEAN | WISCONSIN | OUTAGAMIE |

| 4. Case Numb__ 58 | 5. Fund Code 44 | 6. Loan Number 03 | 7. Date JUNE 9, 2016 |
|---|---|---|---|

| 8. TYPE __ISTANCE D-OL-NBF-REG 7 | 9. ACTION REQUIRING PROMISSORY NOTE: |
|---|---|

9. ACTION REQUIRING PROMISSORY NOTE:

- [ ] Initial loan
- [ ] Conservation easement
- [ ] Deferred payments
- [ ] Consolidation
- [ ] Rescheduling
- [ ] Debt write down
- [x] Subsequent loan
- [ ] Reamortization

10. FOR VALUE RECEIVED, the undersigned borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture (Government), or its assigns, at its office in *(a)* SHAWANO, WISCONSIN or at such other place as the Government may later designate in writing, the principal sum of *(b)* FIFTY THOUSAND DOLLARS AND 00/00 - - -

dollars *(c)* ($  $ 50,000.00 , plus interest on the unpaid principal balance at the **RATE** of *(d)* TWO AND ONE QUARTER - - --

percent *(e)* 2.250 %) per annum. If this note is for a Limited Resource loan (indicated in Item 8) the Government may **CHANGE THE RATE OF INTEREST** in accordance with its regulations, by giving the borrower thirty (30) days prior written notice by mail to the borrower's last known address. The new interest rate shall not exceed the highest rate established in the Government's regulations for the type of loan indicated in Item 8.

11. Principal and interest shall be paid in *(a)* 8

installments as indicated below, except as modified by a different rate of interest on or before the following dates:

| (b) Installment amount | (c) Due Date | (b) Installment amount | (c) Due Date |
|---|---|---|---|
| $  4,381.00 | 01/01/2017 | $  7,838.00 | 01/01/2018 |
| $  n/a | n/a | $  n/a | n/a |
| $  n/a | n/a | $  n/a | n/a |
| $  n/a | n/a | $  n/a | n/a |

and *(d)* $  7,838.00 thereafter on the *(e)* 1st of each *(f)* year until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable *(g)* 7 years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments

12. If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the borrower as requested by the borrower and approved by the Government. Approval by the Government will be given, provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from the actual date disbursed.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.*

Initial *S.P.C.* Date *6/9/16*

**Exhibit C**

Case 1:19-cv-01000-WCG   Filed 07/15/19   Page 1 of 3   Document 1-3

13.  Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by the Borrower to the Government without demand.

14.  Every payment made on any indebtedness evidenced by this note shall be applied according to priorities set in 7 CFR Part 765, or any successor regulation.

15.  Prepayment of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of the Borrower to pay the remaining installments as scheduled in this note.

16.  Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, the Borrower will operate such property as a farm.

17.  If "Debt Write Down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in Item 9, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of, the unpaid principal and interest on the following described notes or assumption agreements under new terms:

| (a) FUND CODE/ LOAN NO. | (b) FACE AMOUNT | (c) INTEREST RATE | (d) DATE (MM-DD-YYYY) | (e) ORIGINAL BORROWER | (f) LAST INSTALL. DUE (MM-DD-YYYY) |
|---|---|---|---|---|---|
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |
|  | $ | % |  |  |  |

18.  Security Instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidation, write down, rescheduling, or reamortization.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

19.  If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, the Borrower will, at the Government's request, apply for and accept a loan in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan or a Conservation Loan.

Initial  S.P.c / JJC    Date  6 / 9 / 16

20. The Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 CFR Part 1940, subpart G, Exhibit M, or any successor regulation.

21. Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute DEFAULT under this and any other instrument evidencing a debt of the Borrower owing to the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. Upon such default, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

22. This note is given as evidence of a loan to the Borrower made by the Government pursuant to the Consolidated Farm and Rural Development Act and for the type of loan as indicated in Item 8. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

23. Presentment, protest, and notice are waived.


_Scott Paul Cartwright_
SCOTT PAUL CARTWRIGHT


_Jacqueline Jean Cartwright_
JACQUELINE JEAN CARTWRIGHT


NOTE:    The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.

   According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.

This form is available electronically.

Form Approved - OMB No. 0560-0238
(See Page 7 for Privacy Act and Paperwork Reduction Act Statements).

| FSA-2028 | U.S. DEPARTMENT OF AGRICULTURE | Position 1 |
|---|---|---|
| (02-01-16) | Farm Service Agency | |

### SECURITY AGREEMENT

1. **THIS SECURITY AGREEMENT,** *dated (a)* __June 9__, __2016__ , is made between the United States of America acting through the U.S. Department of Agriculture, Farm Service Agency (Secured Party) and (b) **SCOTT PAUL CARTWRIGHT, JACQUELINE JEAN CARTWRIGHT**

(Debtor), whose mailing address is (c) __W10460 KICKHAFER RD, NEW LONDON, WI 54961-9213__

2. **BECAUSE** Debtor is justly indebted to Secured Party as evidenced by one or more certain promissory notes or other instruments, and in the future may incur additional indebtedness to Secured Party which will also be evidenced by one or more promissory notes or other instruments, all of which are called "Note," which has been executed by Debtor, is payable to the order of Secured Party, and authorizes acceleration of the entire indebtedness at the option of Secured Party upon any default by Debtor; and

The Note evidences a loan to Debtor, and Secured Party at any time may assign the Note to any extent authorized by the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party; and

It is the purpose and intent of this Security Agreement to secure prompt payment of the Note and the timely performance of all obligations and covenants contained in this Security Agreement; and

**NOW THEREFORE,** in consideration of said loans and *(1)* to secure the prompt payment of all existing and future indebtedness and liabilities of Debtor to Secured Party and of all renewals and extensions of such indebtedness and any additional loans or future advances to Debtor before or after made by Secured Party under the then existing provisions of the Consolidated Farm and Rural Development Act or any other Act administered by Secured Party all with interest; *(2)* in any event and at all times to secure the prompt payment of all advances and expenditures made by Secured Party, with interest, as described in this Security Agreement; and *(3)* the timely performance of every covenant and agreement of Debtor contained in this Security Agreement or in any supplementary agreement.

**MICROLOANS ONLY. DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral as indicated with (m). For the microloan collateral involving equipment and livestock, Secured Party acknowledges that it is taking a security interest in the specifically listed equipment or livestock and all replacements or substitutions. For microloan crop collateral, Secured Party acknowledges that it is taking a security interest in the specific crop, inventory, accounts and contract rights, crop indemnity payments, all entitlements, benefits, and payments from State and Federal farm programs, and deposit amounts arising out of the Debtor's operation or ownership of that crop. Any after acquired provisions in this Security Agreement do not apply to microloan collateral unless the loan is serviced pursuant to 7 C.F.R. part 766. PLEASE NOTE: This provision shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein for all other loans:

**ALL OTHER LOANS. DEBTOR GRANTS** to Secured Party a security interest in Debtor's interest in the following described collateral, including the proceeds and products thereof, accessions thereto, future advances and security acquired hereinafter (collateral); provided however the following description of specific items of collateral shall not in any way limit the collateral covered by this Security Agreement and the Secured Party's interest therein *(a)*:

Initial _SPC_ Date _6/9/16_
_JJC_

**Exhibit D**

(b)  All crops, annual and perennial, and other plant or farm products now planted, growing or grown, or harvested or which are planted after this Security Agreement is signed or otherwise become growing or harvested crops or other plant products *(1)* within the one-year period or any longer period of years permissible under State law, or *(2)* at any time after this Security Agreement is signed if no fixed maximum period is prescribed by State law, including crops and plant products now planted, to be planted, growing or grown or harvested on the following described real estate:

| (1)<br>Farm or Other Real Estate Owner | (2)<br>Approximate<br>Number of Acres | (3)<br>County and State | (4)<br>Approximate Distance and<br>Direction from Named Town or<br>Other Description |
|---|---|---|---|
|  |  |  | all plant and plant products<br>wherever grown |

Including all entitlements, benefits, and payments from all State and Federal farm programs; all crop indemnity payments; all payment intangibles arising from said crops and all general intangibles arising from said crops; and all allotments and quotas existing on or leased and transferred or to be leased and transferred to the above described farms as well as any proceeds derived from the conveyance or lease and transfer by the Debtor to any subsequent party.

Initial *SPC* Date *6/9/16*

(c)  All farm and other equipment (except small tools and small equipment such as hand tools, power lawn mowers and other items of like type unless described below), and inventory, now owned or hereafter acquired by Debtor, together with all replacements, substitutions, additions, and accessions thereto, including but not limited to the following which are located in the State(s) of *(1)* WISCONSIN

| (2) Line No. | (3) Quantity | (4) Kind | (5) Manufacturer | (6) Size and Type | (7) Condition | (8) Year | (9) Serial or Model No. |
|---|---|---|---|---|---|---|---|
| 1 | 1 | tractor | Case IH | 7110 MFWD CAH | good | | JJA0034234 |
| 2 | 1 | tractor | IH | 1086 2 WD | good | | 2610177023660 |
| 3 | 1 | tractor | AGCO | DT200A 4WD | v good | 2006 | SAEJ21947CS AB352.1 |
| 4 | 1 | skid steer | Case IH | 1840 | good | | |
| 5 | 1 | Skidsteer | JD | 332D | v good | 2010 | JD credit lien |
| 6 | 1 | skidsteer stone bucket | Berlon | Grapple type | excellent | | |
| 7 | 1 | Skidsteer Util. Bucket | JD | heavy-duty | excellent | | |
| 8 | 1 | skidsteer bale spear | Burlon | | excellent | | |
| 9 | 1 | pallet forks | | | good | | |
| 10 | 3 | buckets | | | good | | |
| 11 | 1 | grapple fork | | | good | | |
| 12 | 1 | tracks | | | good | | |
| 13 | 1 | stone bucket | | | good | | |
| 14 | 1 | Skidsteer bale squeezer | Hoover | | good | | |
| 15 | 1 | combine w/RWA | Case IH | 1680 AXLE-FLOW | good | 1986 | X18310X |
| 16 | 1 | corn head | Case IH | 1063 6R Narrow | good | | 000810 |
| 17 | 1 | corn head | Case IH | 844 4R Corn Hd | good | | 0730100U033437 |
| 18 | 1 | flex head | Case IH | 820 20' | fair | | |
| 19 | 1 | flex head | Case IH | 1020 20' | v good | 2003 | JJC0328971 |
| 20 | 1 | corn head | Case IH | 844 4R Corn Hd | good | | 0730100001301 |
| 21 | 1 | corn planter w/liq. fert | JD | 1760 MaxE Merge Plus 12R no-tl | good | | HO1760F675265 |
| 22 | 1 | cultivator | Fred Crow | 12 row | good | | |
| 23 | 1 | chisel plow | Brillion | 12 Shank | good | | |
| 24 | 1 | subsoiler | DMI | 527 5 shank | good | 2005 | |
| 25 | 1 | disk | IH | 470 20' | good | | |
| 26 | 1 | field cultivator | Wilrich | 32' w/5 bar drag | good | 1998 | |
| 27 | 1 | culti-mulcher | IH | 315 24' | good | | |
| 28 | 1 | planter seed senser | J/D | w/GPS | good | 2009 | |
| 29 | 1 | windrower | JD | 4955 SP w/16ft rotary platfir | v good | 2008 | EO4995X340732 |
| 30 | 1 | baler - large square | Case IH | 8575 | good | | CFH0163287 |
| 31 | 1 | rake | H&S | 12 wheel | good | | |
| 32 | 1 | rotary rake | Miller | 1100 | good | 1999 | |
| 33 | 1 | grain cart | EZ Trail | 510 500 bu | good | 1999 | L00195 |
| 34 | 1 | stalk chopper | MC | 6 row | good | | |
| 35 | 1 | mower | Woods | F106 side mtd rotary | good | | |
| 36 | 1 | combine head mover | EZ Trail | | v good | 2005 | |
| 37 | 1 | mower | Dixon Ram | 50 Mag ZTR 52" | good | | |
| 38 | 1 | round baler wrapper | Claas | Rollant 255 RC Uniwrap | good | 2006 | 72601345 |

Initial *S.P.C*  Date *6/9/16*
*99C*

| 39 | 1 | Head Mover | J&M | 25-ft | v. good | | |
| 40 | 1 | *Pressure washer | | stean | good | | *50% ownership w/Sugar Creek |
| 41 | 1 | air compressor | | V-Twin  3 phase | good | | |
| 42 | 1 | semi-trailer | | flatbed 42ft | good | 1984 | |
| 43 | 1 | trailer-bumper hitch w/ramps | homemade | 16' | good | | |
| 44 | 1 | fertilizer saddle tanks | | 250 gal | v good | | |
| 45 | 1 | running gear | Knowles | 10T | good | | |
| 46 | 1 | manure spreader | H&S | 350-82 | v good | | II-138 |
| 47 | 1 | motor | | 75 HP electric | good | | |
| 48 | 1 | generator | Win Power | 45KW | v good | | |
| 49 | 1 | auger on transport | Koyker | 8" x 75' | good | | |
| 50 | 1 | Hopper bottom semi-trailer | Cornhusker | 42-ft | good | 1978 | |

(10)Including the following described fixtures which are affixed, or are to be affixed to real estate, as extracted collateral; or timber to be cut, all of which, together with the associated real estate, are more particularly described as follows:

Initial _S.P.C_ Date _6/9/16_

(d) All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following located in the State(s) of *(1)*

WISCONSIN

| (2) Line No. | (3) Quantity | (4) Kind or Sex | (5) Breed | (6) Color | (7) Weight | (8) Age | (9) Brand or Other Identification |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |
| 16 | | | | | | | |
| 17 | | | | | | | |
| 18 | | | | | | | |
| 19 | | | | | | | |
| 20 | | | | | | | |
| 21 | | | | | | | |
| 22 | | | | | | | |
| 23 | | | | | | | |
| 24 | | | | | | | |
| 25 | | | | | | | |
| 26 | | | | | | | |
| 27 | | | | | | | |
| 28 | | | | | | | |

Initial *SPC* Date *6/9/16*
*JJC*

(e) All accounts, deposit accounts, goods, supplies, inventory, supporting obligations, investment property, certificates of title, payment intangibles, and general intangibles, including but not limited to the following:

All FSA program payments

## 3. DEBTOR WARRANTS, COVENANTS, AND AGREES THAT:

(a) Debtor is the absolute and exclusive owner of the above-described collateral, and any marks or brands used to describe livestock are the holding brands and carry the title, although the livestock may have other marks or brands, and such collateral is free from all liens, encumbrances, security and other interests except *(1)* any existing liens, encumbrances, security or other interests in favor of Secured Party which shall remain in full force and effect; *(2)* any applicable landlord's statutory liens; and (3) other liens, encumbrances, security or other interests previously disclosed to Secured Party in the loan application, farm operating plan or other loan documents. Debtor will defend the collateral against the claims and demands of all other persons.

(b) Statements contained in Debtor's loan application and related loan documents are true and correct and that Debtor's name, as stated in the loan application and in this Security Agreement, is Debtor's complete legal name; and Debtor will *(1)* use the loan funds for the purposes for which they were or are advanced; *(2)* comply with such farm operating plans as may be agreed upon from time to time by Debtor and Secured Party; *(3)* care for and maintain collateral in a good and husbandlike manner; *(4)* insure the collateral in such amounts and manner as may be required by Secured Party, and if Debtor fails to do so, Secured Party, at its option, may procure such insurance; *(5)* permit Secured Party to inspect the collateral at any reasonable time; *(6)* not abandon the collateral or encumber, conceal, remove, sell or otherwise dispose of it or of any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party; *(7)* not permit the collateral to be levied upon, injured or destroyed, or its value to be impaired, except by using harvested crops in amounts necessary to care for livestock covered by this Security Agreement; and *(8)* maintain accurate records of the collateral, furnish Secured Party any requested information related to the collateral and allow Secured Party to inspect and copy all records relating to the collateral.

(c) Debtor will pay promptly when due all *(1)* indebtedness evidenced by the Note and any indebtedness to Secured Party secured by this Security Agreement; *(2)* rents, taxes, insurance premiums, levies, assessments, liens, and other encumbrances, and costs of lien searches and maintenance and other charges now or later attaching to, levied on, or otherwise pertaining to the collateral or this security interest; *(3)* filing or recording fees for instruments necessary to perfect, continue, service, or terminate this security interest; and *(4)* fees and other charges now or later required by regulations of the Secured Party.

(d) Secured Party is authorized to file financing statements describing the collateral, to file amendments to the financing statements and to file continuation statements.

(e) Debtor will immediately notify Secured Party of any material change in the collateral or in the collateral's location; change in Debtor's name, address, or location; change in any warranty or representation in this Security Agreement; change that may affect this security interest or its perfection; and any event of default.

(f) Secured Party may at any time pay any other amounts required in this instrument to be paid by Debtor and not paid when due, including any costs and expenses for the preservation or protection of the collateral or this security interest, as advances for the account of Debtor. All such advances shall bear interest at the rate borne by the Note which has the highest interest rate.

(g) All advances by Secured Party as described in this Security Agreement, with interest, shall be immediately due and payable by Debtor to Secured Party without demand and shall be secured by this Security Agreement. No such advance by Secured Party shall relieve Debtor from breach of the covenant to pay. Any payment made by Debtor may be applied on the Note or any indebtedness to Secured Party secured hereby, in any order Secured Party determines.

(h) In order to secure or better secure the above-mentioned obligations or indebtedness, Debtor agrees to execute any further documents, including additional security instruments on such real and personal property as Secured Party may require and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein or to effectuate the rights granted to Secured Party herein.

Initial *SPC* Date *6/9/16*

**4. IT IS FURTHER AGREED THAT:**

(a) Until default, Debtor may retain possession of the collateral.

(b) **Default** shall exist under this Security Agreement if Debtor fails to perform or discharge any obligation or to pay promptly any indebtedness secured by this Security Agreement or to observe or perform any covenants or agreements in this Security Agreement or in any supplementary agreement contained, or if any of Debtor's representations or warranties herein prove false or misleading, or upon the death or incompetency of the parties named as Debtor, or upon the bankruptcy or insolvency of any one of the parties named as Debtor. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands, as described in 7 CFR Part 1940, Subpart G, Exhibit M or any successor regulation. Upon any default:

    (1) Secured Party, at its option, with or without notice as permitted by law may *(a)* declare the unpaid balance on the Note and any indebtedness secured by this Security Agreement immediately due and payable; *(b)* enter upon the premises and cultivate and harvest crops, take possession of, repair, improve, use, and operate the collateral or make equipment usable, for the purpose of protecting or preserving the collateral or this lien, or preparing or processing the collateral for sale, and *(c)* exercise any sale or other rights accorded by law. Secured Party may disclaim all warranties relating to title, possession, quiet enjoyment, merchantability, fitness or the like in any disposition of the collateral;

    (2) Debtor *(a)* agrees to assemble the collateral and make it available to Secured Party at such times and places as designated by Secured Party; and *(b)* waives all notices, exemptions, compulsory disposition and redemption rights;

    (3) A default shall exist under any other security instrument held by Secured Party and executed or assumed by Debtor on real or personal property. Likewise, default under such other security instrument shall constitute default under this Security Agreement.

(c) Proceeds from disposition of collateral shall be applied first on expenses of retaking, holding, preparing for sale, processing, selling and the like and for payment of reasonable attorneys' fees and legal expenses incurred by Secured Party, second to the satisfaction of prior security interests or liens to the extent required by law and in accordance with current regulations of the Secured Party, third to the satisfaction of indebtedness secured by this Security Agreement, fourth to the satisfaction of subordinate security interests to the extent required by law, fifth to any obligations of Debtor owing to Secured Party and sixth to Debtor. Any proceeds collected under insurance policies shall be applied first on advances and expenditures made by Secured Party, with interest, as provided above, second on the debt evidenced by the Note, unless Secured Party consents in writing to their use by Debtor under Secured Party's direction for repair or replacement of the collateral, third on any other obligation of Debtor owing to Secured Party, and any balance shall be paid to Debtor unless otherwise provided in the insurance policies. Debtor will be liable for any deficiency owed to Secured Party after such disposition of proceeds of the collateral and insurance.

(d) It is the intent of Debtor and Secured Party that to the extent permitted by law and for the purpose of this Security Agreement, no collateral covered by this Security Agreement is or shall become realty or accessioned to other goods.

(e) Debtor agrees that the Secured Party will not be bound by any present or future State exemption laws. Debtor expressly **WAIVES** the benefit of any such State laws.

(f) Secured Party may comply with any applicable State or Federal law requirements in connection with the disposition of the collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the collateral.

(g) This Security Agreement is subject to the present regulations of the Secured Party and to its future regulations not inconsistent with the express provisions of this Security Agreement.

(h) If any provision of this Security Agreement is held invalid or unenforceable, it shall not affect any other provisions, but this Security Agreement shall be construed as if it had never contained such invalid or unenforceable provision.

(i) The rights and privileges of Secured Party under this Security Agreement shall accrue to the benefit of its successors and assigns. All covenants, warranties, representations, and agreements of Debtor contained in this Security Agreement are joint and several and shall bind personal representatives, heirs, successors, and assigns.

Initial *SPC* Date *6/9/16*

(j)  If at any time it shall appear to Secured Party that Debtor may be able to obtain a loan from other credit sources, at reasonable rates and terms for loans for similar purposes and periods of time, Debtor will, upon Secured Party's request, apply for and accept such loan in sufficient amount to pay the Note and any indebtedness secured by this Security Agreement. Debtor will be responsible for any application fees or purchase of stock in connection with such loan. The provisions of this paragraph do not apply if the Note secured by this Security Agreement is for a Conservation Loan.

(k)  Failure of the Secured Party to exercise any right, whether once or often, shall not be construed as a waiver of any covenant or condition or of the breach of such covenant or condition. Such failure shall also not affect the exercise of such right without notice upon any subsequent breach of the same or any other covenant or condition.

(l)  **SECURED PARTY HAS INFORMED DEBTOR THAT DISPOSAL OF PROPERTY COVERED BY THIS SECURITY AGREEMENT WITHOUT THE CONSENT OF SECURED PARTY, OR MAKING ANY FALSE STATEMENT IN THIS SECURITY AGREEMENT OR ANY OTHER LOAN DOCUMENT, MAY CONSTITUTE A VIOLATION OF FEDERAL CRIMINAL LAW.**

(m) Debtor(s) acknowledge(s) that Secured Party loaned money to me/us to purchase items of collateral that serve as security for my/our loan, thereby, giving Secured Party a Purchase Money Security Interest in those items of collateral listed in Part 2 with an asterisk*.

## 5.  CERTIFICATION

*I certify that the information provided is true, complete and correct to the best of my knowledge and is provided in good faith. (Warning: Section 1001 of Title 18, United States Code, provides for criminal penalties to those who provide false statements.  If any information is found to be false or incomplete, such finding may be grounds for denial of the requested action.)*

Initial *SPC* Date *6 / 9 / 16*

6A. _Scott P. Cartright_      6B. *(Date)* 6/9/16

SCOTT PAUL CARTWRIGHT

_Jacqueline Jean Cartwright_      *(Date)* 6-9-16

JACQUELINE JEAN CARTWRIGHT

> **NOTE:** *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*
>
> *According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0238. The time required to complete this information collection is estimated to average 20 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. **RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.***

*In accordance with Federal civil rights law and U.S. Department of Agriculture (USDA) civil rights regulations and policies, the USDA, its Agencies, offices, and employees, and institutions participating in or administering USDA programs are prohibited from discriminating based on race, color, national origin, religion, sex, gender identity (including gender expression), sexual orientation, disability, age, marital status, family/parental status, income derived from a public assistance program, political beliefs, or reprisal or retaliation for prior civil rights activity, in any program or activity conducted or funded by USDA (not all bases apply to all programs). Remedies and complaint filing deadlines vary by program or incident.*

*Persons with disabilities who require alternative means of communication for program information (e.g., Braille, large print, audiotape, American Sign Language, etc.) should contact the responsible Agency or USDA's TARGET Center at (202) 720-2600 (voice and TTY) or contact USDA through the Federal Relay Service at (800) 877-8339. Additionally, program information may be made available in languages other than English.*

*To file a program discrimination complaint, complete the USDA Program Discrimination Complaint Form, AD-3027, found online at http://www.ascr.usda.gov/complaint_filing_cust.html and at any USDA office or write a letter addressed to USDA and provide in the letter all of the information requested in the form. To request a copy of the complaint form, call (866) 632-9992. Submit your completed form or letter to USDA by: (1) Mail: U.S. Department of Agriculture Office of the Assistant Secretary for Civil Rights 1400 Independence Avenue, SW Washington, D.C. 20250-9410; (2) Fax: (202) 690-7442; or (3) email: program.intake@usda.gov.*

**Wisconsin Department of Financial Institutions**

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

*20.00*

A. NAME & PHONE OF CONTACT AT FILER [optional]
MADONNA SEEFELDT (715) 524-4814    |0865

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

```
┌                                        ┐
  FARM SERVICE AGENCY
  603A LAKELAND ROAD
  SHAWANO, WI 54166

└                                        ┘
```

**RECEIVED**

SEP 12 2012

SHAWANO FSA OFFICE

R 3/6/17
D 9/6/17

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| CARTWRIGHT | SCOTT | PAUL | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| W10460 KICKHAFER ROAD | NEW LONDON | WI | 54961 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| NOT REQUIRED IN WIS | ORGANIZATION DEBTOR | | | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| CARTWRIGHT | JACQUELINE | JEAN | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| W10460 KICKHAFER ROAD | NEW LONDON | WI | 54961 | |

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| NOT REQUIRED IN WIS | ORGANIZATION DEBTOR | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR United States of America acting through Farm Service Agency | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 603A Lakeland Road | Shawano | WI | 54166 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All crops, livestock, farm products, equipment, certificates of title, goods, supplies, inventory, accounts, deposit accounts, supporting obligations, payment intangibles, general intangibles, investment property, crop insurance indemnity payments, and all entitlements, benefits and payments from all state and federal farm programs; all proceeds, products, accessions, and security acquired hereafter. The security interest perfected secures a future advance clause and the security agreement contains an after-acquired clause. Disposition of such collateral is not hereby authorized.

| 5. ALTERNATIVE DESIGNATION [if applicable] | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ THIS FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | | All Debtors | Debtor 1 | Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

* An Individual's social security number is not required to be placed on the form in Wisconsin (See Instructions)

**Exhibit E**

## UCC FINANCING STATEMENT AMENDMENT





| NAME & PHONE OF CONTACT |
| --- |
| lynn shallow |
| lynn.shallow@wi.usda.gov |
| 715-524-4814 |

| SEND ACKNOWLEDGMENT TO: |
| --- |
| lynn shallow |
| lynn.shallow@wi.usda.gov |

Filing # - 170010454519
Filed - 8/1/2017 11:54:07 AM
Wisconsin Department of Financial Institutions

INITIAL FINANCING STATEMENT FILE #
120011671925
Statement Type
CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the
Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.
NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT

| OR | ORGANIZATION'S NAME |  |  |  |
| --- | --- | --- | --- | --- |
|  | farm service agency |  |  |  |
|  | INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(s)/INITIAL(s) | SUFFIX |

OPTIONAL FILER REFERENCE DATA
SCOTT CARTWRIGHT

1958891

Recorded
September 12, 2012 11:15 AM
OUTAGAMIE COUNTY
JANICE FLENZ
REGISTER OF DEEDS
Fee Amount: $30.00
Total Pages: 8



# MORTGAGE FOR WISCONSIN

| Document Number | Document Title |
|---|---|

**Name & Return Address:**
SHAWANO FARM SERVICE AGENCY
603A LAKELAND ROAD
SHAWANO, WI 54166

Form Approved - OMB No. 0560-0237
3-FLP, WI Subparagraph 91B, 398A
and WI Exhibit 3



**RECEIVED**

SEP 26 2012

SHAWANO FSA OFFICE

**NOTE:** *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.*

**Recording Area**

**Parcel Identification Number (PIN):**
160-025000; 160-025100;
160-025200; 160-024700;
160-027102

THIS MORTGAGE (**"instrument"**) is made **SEPTEMBER 4 , 2012**. The mortgagor is **SCOTT PAUL CARTWRIGHT AND JACQUELINE JEAN CARTWRIGHT, husband and wife as survivorship marital property** (**"Borrower"**) whose mailing address is W10460 KICKHAFER ROAD, NEW LONDON, WI 54961. This instrument is given to the United States of America, acting through the Farm Service Agency, United States Department of Agriculture (**"Government"**) located at 603A LAKELAND ROAD, SHAWANO, WI 54166.

This instrument secures the following promissory notes, assumption agreements and/or shared appreciation agreements (collectively called **"Note"**), which have been executed or assumed by the Borrower unless otherwise noted, are payable to the Government, and authorize acceleration of the entire debt upon any default:

| Date of Instrument | Principal Amount | Annual Rate Interest |
|---|---|---|
| 9-4-2012 | $300,000.00 | 1.1250% |

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be increased as provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all proceeds for the loan or loans evidenced by the above note.

This instrument secures to the Government: (1) payment of the note and all extensions, renewals, and modifications thereof; (2) recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U.S. C. § 2001; (3) payment of all advances and expenditures, with interest, made by the Government, and (4) the obligations and covenants of Borrower set forth in this instrument, the Note, and any other loan agreements.

*This Instrument Was Drafted By The United States Department Of Agriculture, Farm Service Agency*

Initial(s) S P C  Date 9/4/12
J C  9-4-12

FSA 2029 WI (07-14-2011) Page 1 of 6

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

**Exhibit G**

Mortgage for Wisconsin (Continued)

In consideration of any loan made by the Government under the consolidated Farm and Rural Development Act, 7 U.S.C. §1921 et seq. as evidenced by the Note, Borrower irrevocably mortgages, grants and conveys to the Government the following described property situated in the State of Wisconsin, County of **OUTAGAMIE**:

## SEE ATTACHED LEGAL DESCRIPTIONS

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereof, revenues and income therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property"). This instrument constitutes a security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions that are now or hereafter included in, affixed, or attached to **"the property**."

Borrower COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record. Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property.

UNIFORM COVENANTS. Borrower COVENANTS AND AGREES as follows:

1.  **Payment**. Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.

2.  **Fees**. Borrower shall pay to the Government such fees and other changes that may now or later be required by Government regulations.

3.  **Application of payments**. Unless applicable law or Government's regulations provide otherwise, all payments received by Government shall be applied in the following order of priority: (a) to advances made under this instrument; (b) to accrued interest due under the note; (c) to principal due under the note; (d) to late charges and other fees and charges.

4.  **Taxes, liens, etc.** Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.

5.  **Assignment.** Borrower grants and assigns as additional security all the right, title and interest in: (a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation; (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements. Borrower warrants the validity and enforceability of this assignment.

Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full. Such money may, at the option of the Government, be applied on the debt whether due or not. The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government. In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

Borrower will promptly provide the Government with copies of all existing and future leases. Borrower warrants that as of the date of executing this instrument no default exists under existing leases. Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law. Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents. Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss or damage that the Government may incur as a consequence of this assignment.

Initial(s) _S.P.C_ Date _9-4/12_

6.      **Insurance**.  Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government. If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U.S.C. §4001 et seq. and Government regulations. All insurance policies and renewals shall include a standard mortgagee clause.

7.      **Advances by Government**. The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements. All such advances shall bear interest at the same rate as the note which has the highest interest rate. All such advances, with interest, shall be immediately due and payable by Borrower to the Government without demand. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any secured debt to the Government, in any order the Government determines.

8.      **Protection of lien**. Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement or compliance with this instrument and the Note. Such expenses include, but are not limited to: costs of evidence of title to, and survey of, the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

9.      **Authorized purposes**.  Borrower shall use the loan evidenced by the Note solely for purposes authorized by the Government.

10.     **Repair and operation of property**. Borrower shall: (a) maintain improvements in good repair; (b) make repairs required by the Government; (c) comply with all farm conservation practices and farm management plans required by the Government; and (d) operate the property in a good and husbandlike manner.  Borrower shall not (e) abandon the property; (f) cause or permit waste, lessening or impairment of the property; or (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.

11.     **Legal compliance**. Borrower shall comply with all laws, ordinances, and regulations affecting the property.

12.     **Transfer or encumbrance of property**. Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government. The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

13.     **Inspection**. At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

14.     **Hazardous substances**. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property. The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property. Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property. Borrower shall not do, nor allow anyone else to do, anything affecting the property that is in violation of any federal, state, or local environmental law or regulation. Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations. As used in this paragraph, "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

15.     **Adjustment; release; waiver; forbearance**. In accordance with Government regulations, the Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the

Initial(s) _S/C_  Date _9-4-12_

FSA 2029 WI (07-14-2011) Page 3 of 6

Mortgage for Wisconsin (Continued)

outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on the note, (d) release any party who is liable under the note from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing. HOWEVER, any forbearance by the Government - whether once or often - in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

16.    **Graduation**. If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17.    **Forfeiture**. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this instrument or the Government's security interest. Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18.    **False statement**. Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19.    **Cross Collateralization**. Default under this instrument shall constitute default under any other security instrument held by the Government and executed or assumed by Borrower. Default under any other such security instrument shall constitute default under this instrument.

20.    **Highly erodible land; wetlands**. Any loan secured by this instrument will be in default if Borrower uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

21.    **Non-discrimination**. If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

22.    **Notices**. Notices given under this instrument shall be sent by certified mail unless otherwise required by law. Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

23.    **Governing law; severability**. This instrument shall be governed by Federal law. If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application. The provisions of this instrument are severable. This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise, and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

24.    **Successors and assigns; joint and several covenants**. The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower.  Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this instrument but does not execute the Note: (a) is co-signing this instrument only to mortgage, grant and convey that Borrower interest in the property under this instrument; (b) is not personally obligated to pay the sums secured by this

Initial(s) SPC    Date 9-4-12
JC

FSA 2029 WI (07-14-2011) Page 4 of 6

Mortgage for Wisconsin (Continued)

instrument; and (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25.    **No merger**. If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing. If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not be affected by such conveyance.

26.    **Time is of the essence**. Time is of the essence in the Borrower's performance of all duties and obligations under this instrument.

NON-UNIFORM COVENANTS. Borrower further COVENANTS AND AGREES as follows:

27.    **Default; death; incompetence; bankruptcy**. Should default occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the Borrower die or be declared incompetent, or should the Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any debt to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of, and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument and sell the property as prescribed by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

28.    **State law.** Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of any action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

29.    **Assignment of leases and rents**. Borrower agrees that the assignment of leases and rents in this instrument is immediately effective on the recording of this instrument. Upon default, the Borrower will receive any rents in trust for the Government, and Borrower will not commingle the rents with any other funds. Any amounts collected shall be applied at the Government's discretion first to costs of managing, protecting and preserving the property, and to any other necessary related expenses. Any remaining amounts shall be applied to reduce the debt evidenced by the note(s). Borrower agrees that the Government may demand that Borrower and Borrower's tenants pay all rents due or to become due directly to the Government if the Borrower defaults and the Government notifies Borrower of the default. Upon such notice, Borrower will endorse and deliver to the Government any payments of rents. If the Borrower becomes subject to a bankruptcy, then Borrower agrees that the Government is entitled to receive relief from the automatic stay in bankruptcy for the purpose of enforcing this assignment.

30.    **Application of foreclosure proceeds**. The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all other debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, and (e) any balance to Borrower. If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government in the order prescribed above.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

X _Scott P. Cartwright_
SCOTT PAUL CARTWRIGHT

X _Jacqueline Jean Cartwright_
JACQUELINE JEAN CARTWRIGHT

_JC_
_SPC_

Initial(s) _S PC_ Date _9-4-12_
_JC_

FSA 2029 WI (07-14-2011) Page 5 of 6

Mortgage for Wisconsin (Continued)

STATE OF WISCONSIN

COUNTY OF SHAWANO

On this 4th day of September, 2012, before me, personally appeared to me Scott Paul Cartwright and Jacqueline Jean Cartwright, to be known to me to be the same persons whose names are subscribed to the foregoing instrument, and acknowledged that they signed and delivered the instrument as their free and voluntary act, for the uses and purposes set forth.

My commission expires: 7-13-2014

MADONNA M. SEEFELDT

NOTARY PUBLIC

Initial(s) _____ Date 9- 4 -12

## ATTACHMENT TO REAL ESTATE MORTAGE FOR SCOTT P. CARTWRIGHT

All of the Mortgagor's (s') rights, title and interest in the following described property under and by virtue of that certain instrument entitled LAND CONTRACT, Dated JANUARY 2, 2007, Recorded on JANUARY 7, 2008, in DOCUMENT #1778822, in OUTAGAMIE COUNTY, WISCONSIN records.

## LEGAL DESCRIPTION

The Northwest 1/4 of the Northwest 1/4 and the Southwest 1/4 of the Northwest 1/4, of Section 17, Township 23 North, Range 15 East, Town of Maple Creek, Outagamie County, Wisconsin

Tax Parcel Nos.: 160-025000; 160-025100

*Mortgagor(s) covenant(s) and agree(s) that default by Mortgagor(s) under certain instrument entitled LAND CONTRACT which instrument is more particularly described above, shall also constitute default under this mortgage.*

ATTACHMENT TO REAL ESTATE MORTAGE FOR SCOTT P. CARTWRIGHT

All of the Mortgagor's (s') rights, title and interest in the following described property under and by virtue of that certain instrument entitled LAND CONTRACT, Dated JANUARY 2, 2007, Recorded on JANUARY 7, 2008, in DOCUMENT #1778823, in OUTAGAMIE COUNTY, WISCONSIN records.

## LEGAL DESCRIPTION

The Southeast 1/4 of the Northwest 1/4 and the Southwest 1/4 of the Northeast 1/4, of Section 17, Township 23 North, Range 15 East, Town of Maple Creek, Outagamie County, Wisconsin.

AND

Lot 2 of CSM No. 3290 recorded in the office of the Register of Deeds for Outagamie County, Wisconsin on September 17, 1998, in Volume 17 of CSM's, Page 3290, as Document No. 1290362, being part of the Southeast 1/4 of the Northeast 1/4 of Section 18, Township 23 North, Range 15 East, Town of Maple Creek, Outagamie County, Wisconsin

Tax Parcel Nos.: 160-025200; 160-024700; 160-027102

*Mortgagor(s) covenant(s) and agree(s) that default by Mortgagor(s) under certain instrument entitled LAND CONTRACT which instrument is more particularly described above, shall also constitute default under this mortgage.*



2048073
Recorded
July 06, 2015 12:23 PM
OUTAGAMIE COUNTY
SARAH R VAN CAMP
REGISTER OF DEEDS
Fee Amount: $30.00
    Total Pages: 7

## MORTGAGE FOR WISCONSIN

| Document Number | Document Title |
|---|---|
| | Form Approved - OMB No. 0560-0237 |

**Name & Return Address:**
**Farm Service Agency**
**603A Lakeland Road**
**Shawano, WI 54166**

NOTE: *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et. seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*

*According to the Paperwork Reduction to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.*

**Recording Area**

**Parcel Identification Number (PIN):**
**160-025000;160-025100; 160-**
**025200;160-024700;160-27102**

THIS MORTGAGE **("instrument")** is made JUNE 29, 2015. The mortgagor is SCOTT PAUL CARTWRIGHT AND JACQUELINE JEAN CARTWRIGHT, husband and wife as survivorship marital property **("Borrower")** whose mailing address is W10460 KICKHAFER ROAD, NEW LONDON, WI 54961. This instrument is given to the United States of America, acting through the Farm Service Agency, United States Department of Agriculture **("Government")** located at 603A LAKELAND ROAD, SHAWANO, WI 54166.

This instrument secures the following promissory notes, assumption agreements and/or shared appreciation agreements (collectively called **"Note"**), which have been executed or assumed by the Borrower unless otherwise noted, are payable to the Government, and authorize acceleration of the entire debt upon any default:

**RECEIVED**

**JUL 2 1 2015**

SHAWANO FSA OFFICE

| Date of Instrument | Principal Amount | Annual Rate of Interest |
|---|---|---|
| 6-29-2015 | $266,753.78 | 1.125% |

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be increased as provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all proceeds for the loan or loans evidenced by the above note.

This instrument secures to the Government: (1) payment of the note and all extensions, renewals, and modifications thereof; (2) recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U.S. C. § 2001; (3) payment of all

*This Instrument Was Drafted By The United States Department Of Agriculture, Farm Service Agency*

Initial(s) S.P.C  Date 6/29/15

**FSA 2029 WI** (07-15-14) Page 1 of 6

*The U.S. Department of Agriculture (USDA) prohibits discrimination against its customers, employees, and applicants for employment on the basis of race, color, national origin, age, disability, sex, gender identity, religion, reprisal, and where applicable, political beliefs, marital status, familial or parental status, sexual orientation, or all or part of an individual's income is derived from any public assistance program, or protected genetic information in employment or in any program or activity conducted or funded by the Department. (Not all prohibited bases will apply to all programs and/or employment activities.) Persons with disabilities, who wish to file a program complaint, write to the address below or if you require alternative means of communication for program information (e.g., Braille, large print, audiotape, etc.) please contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). Individuals who are deaf, hard of hearing, or have speech disabilities and wish to file either an EEO or program complaint, please contact USDA through the Federal Relay Service at (800) 877-8339 or (800) 845-6136 (in Spanish).*

*If you wish to file a Civil Rights program complaint of discrimination, complete the USDA Program Discrimination Complaint Form, found online at http://www.ascr.usda.gov/complaint_filing_cust.html, or at any USDA office, or call (866) 632-9992 to request the form. You may also write a letter containing all of the information requested in the form. Send your completed complaint form or letter by mail to U.S. Department of Agriculture, Director, Office of Adjudication, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, by fax (202) 690-7442 or email at program.intake@usda.gov. USDA is an equal opportunity provider and employer.*

# Exhibit H

Mortgage for Wisconsin (Continued)

advances and expenditures, with interest, made by the Government, and (4) the obligations and covenants of Borrower set forth in this instrument, the Note, and any other loan agreements.

In consideration of any loan made by the Government under the Consolidated Farm and Rural Development Act, 7 U.S.C. §1921 et seq. as evidenced by the Note, Borrower irrevocably mortgages, grants and conveys to the Government the following described property situated in the State of Wisconsin, County of Outagamie:

see attached legal description

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereof, revenues and income therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property"). This instrument constitutes a security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions that are now or hereafter included in, affixed, or attached to "the property."

Borrower COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property.

UNIFORM COVENANTS. Borrower COVENANTS AND AGREES as follows:

1.     **Payment**.  Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.

2.     **Fees**.  Borrower shall pay to the Government such fees and other changes that may now or later be required by Government regulations.

3.     **Application of payments**.  Unless applicable law or Government's regulations provide otherwise, all payments received by Government shall be applied in the following order of priority: (a) to advances made under this instrument; (b) to accrued interest due under the note; (c) to principal due under the note; (d) to late charges and other fees and charges.

4.     **Taxes, liens, etc.**  Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.

5.     **Assignment.**  Borrower grants and assigns as additional security all the right, title and interest in: (a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation; (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements. Borrower warrants the validity and enforceability of this assignment.

Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full. Such money may, at the option of the Government, be applied on the debt whether due or not. The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government. In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

Borrower will promptly provide the Government with copies of all existing and future leases. Borrower warrants that as of the date of executing this instrument no default exists under existing leases. Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law. Borrower will obtain the Government's written authorization before Borrower consents to

Initial(s) *SPC*  Date *6/29/15*
*JC*

Mortgage for Wisconsin (Continued)

sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents. Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss or damage that the Government may incur as a consequence of this assignment.

6.      **Insurance**.  Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government. If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U.S.C. §4001 et seq. and Government regulations. All insurance policies and renewals shall include a standard mortgagee clause.

7.      **Advances by Government**. The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements. All such advances shall bear interest at the same rate as the note which has the highest interest rate. All such advances, with interest, shall be immediately due and payable by Borrower to the Government without demand. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any secured debt to the Government, in any order the Government determines.

8.      **Protection of lien**. Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement or compliance with this instrument and the Note. Such expenses include, but are not limited to: costs of evidence of title to, and survey of, the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

9.      **Authorized purposes**.  Borrower shall use the loan evidenced by the Note solely for purposes authorized by the Government.

10.     **Repair and operation of property**. Borrower shall: (a) maintain improvements in good repair; (b) make repairs required by the Government; (c) comply with all farm conservation practices and farm management plans required by the Government; and (d) operate the property in a good and husbandlike manner.  Borrower shall not (e) abandon the property; (f) cause or permit waste, lessening or impairment of the property; or (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.

11.     **Legal compliance**. Borrower shall comply with all laws, ordinances, and regulations affecting the property.

12.     **Transfer or encumbrance of property**. Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government. The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

13.     **Inspection**. At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

14.     **Hazardous substances**. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property. The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property. Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property. Borrower shall not do, nor allow anyone else to do, anything affecting the property that is in violation of any federal, state, or local environmental law or regulation. Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations. As used in this paragraph, "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

Initial(s) _SPC_  Date _6/29/15_                                         **FSA 2029 WI** (07-15-14) Page 3 of 6

Mortgage for Wisconsin (Continued)

15.    **Adjustment; release; waiver; forbearance**. In accordance with Government regulations, the Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on the note, (d) release any party who is liable under the note from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing. HOWEVER, any forbearance by the Government - whether once or often - in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

16.    **Graduation**. If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17.    **Forfeiture**. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this instrument or the Government's security interest. Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18.    **False statement**. Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19.    **Cross Collateralization**. Default under this instrument shall constitute default under any other security instrument held by the Government and executed by Borrower. Default under any other such security instrument shall constitute default under this instrument.

20.    **Highly erodible land; wetlands**. Any loan secured by this instrument will be in default if Borrower uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

21.    **Non-discrimination**. If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

22.    **Notices**. Notices given under this instrument shall be sent by certified mail unless otherwise required by law. Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

23.    **Governing law; severability**. This instrument shall be governed by Federal law. If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application. The provisions of this instrument are severable. This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise, and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

24.    **Successors and assigns; joint and several covenants**. The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower.  Borrower's covenants and agreements shall be joint and several.

Initial(s) _SPC_  Date _6/29/15_

FSA 2029 WI (07-15-14) Page 4 of 6

Case 1:19-cv-01000-WCG   Filed 07/15/19   Page 4 of 7   Document 1-8

Mortgage for Wisconsin (Continued)

Any Borrower who co-signs this instrument but does not execute the Note: (a) is co-signing this instrument only to mortgage, grant and convey that Borrower interest in the property under this instrument; (b) is not personally obligated to pay the sums secured by this instrument; and (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25.     **No merger**. If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing. If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not be affected by such conveyance.

26.     **Time is of the essence**. Time is of the essence in the Borrower's performance of all duties and obligations under this instrument.

NON-UNIFORM COVENANTS. Borrower further COVENANTS AND AGREES as follows:

27.     **Default; death; incompetence; bankruptcy**. Should default occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the Borrower die or be declared incompetent, or should the Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any debt to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of, and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument and sell the property as prescribed by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

28.     **State law.** Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of any action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

29.     **Assignment of leases and rents**. Borrower agrees that the assignment of leases and rents in this instrument is immediately effective on the recording of this instrument. Upon default, the Borrower will receive any rents in trust for the Government, and Borrower will not commingle the rents with any other funds. Any amounts collected shall be applied at the Government's discretion first to costs of managing, protecting and preserving the property, and to any other necessary related expenses. Any remaining amounts shall be applied to reduce the debt evidenced by the note(s). Borrower agrees that the Government may demand that Borrower and Borrower's tenants pay all rents due or to become due directly to the Government if the Borrower defaults and the Government notifies Borrower of the default. Upon such notice, Borrower will endorse and deliver to the Government any payments of rents. If the Borrower becomes subject to a bankruptcy, then Borrower agrees that the Government is entitled to receive relief from the automatic stay in bankruptcy for the purpose of enforcing this assignment.

30.     **Application of foreclosure proceeds**. The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all other debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other debt of Borrower to the Government, and (f) any balance to Borrower. If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government in the order prescribed above.

Initial(s) _S.P.C._ Date _6/29/15_                    **FSA 2029 WI** (07-15-14) Page 5 of 6

Mortgage for Wisconsin (Continued)

By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

_Scott P Cartwright_
Scott Paul Cartwright

_Jacqueline Cartwright_
Jacqueline Jean Cartwright

STATE OF WISCONSIN
COUNTY OF OUTAGAMIE   ss.

On this 29th day of June, 2015, before me, the undersigned, personally appeared Scott Paul Cartwright and Jacqueline Jean Cartwright, husband and wife to be known to me to be same whose name is subscribed, to the foregoing instrument, and acknowledged that they signed and delivered the instrument as their free and voluntary acts, for the uses and purposes set forth.

My commission expires:  9/11/2016

_Lynn M. Shallow_
Lynn M. Shallow
NOTARY PUBLIC

Mortgagor(s) covenant(s) and agree(s) that default by Mortgagor(s) under certain instrument entitled LAND CONTRACT which instrument is more particularly described on attachment, shall also constitute default under this mortgage.

Initial(s) _SPC_ Date _6/29/15_

All of the Mortgagor's rights, title and interest in the following described property under and by virtue of that certain instrument entitled LAND CONTRACT, Dated January 2, 2007, Recorded on January 7, 2008, in document #1778823, in Outagamie County, Wisconsin records.

The Southeast ¼ of the Northwest ¼ and the Southwest ¼ of the Northeast ¼ of Section 17, Township 23 North, Range 15 East, town of maple Creek, Outagamie County, Wisconsin. AND

Lot 2 of CSM No. 3290 recorded in the office of the Register of Deeds for Outagamie County, Wisconsin on September 17, 1998, in Volume 17 of ChM's Page 3290, as Document No. 1290362, being part of the Southeast ¼ of the Northeast ¼ of Section 18, Township 23 North, Range 15 East, Town of Maple Creek Outagamie County, Wisconsin.
Mortgagor(s) covenant(s) and agree(s) that default by Mortgagor(s) under certain instrument entitled LAND CONTRACT which instrument is more particularly described above, shall also constitute default under this mortgage.

All of the Mortgagor's rights, title and interest in the following described property under and by virtue of that certain instrument entitled LAND CONTRACT, Dated January 2, 2007, and Recorded on January 7, 2008, in document #1778822, in Outagamie County, Wisconsin records.

Lots 1 & 2 CSM No. 5944, recorded in the office of the Register of Deeds for Outagamie County, Wisconsin on February 24, 2009, in Volume 34 of CSM's Page 5944, as Document No. 1823798, being part of the Northwest ¼ of the Northwest ¼ of Section 17, Township 23 North, Range 15 East, Town of Maple Creek, Outagamie County, Wisconsin.
AND
The Southwest ¼ of the Northwest ¼ of Section 17, Township 23 North, Range 15 East, Town of Maple Creek, Outagamie County, Wisconsin.
Mortgagor(s) covenant(s) and agree(s) that default by Mortgagor(s) under certain instrument entitled LAND CONTRACT which instrument is more particularly described above, shall also constitute default under this mortgage.

2075535

Recorded

June 20, 2016 12:09 PM

OUTAGAMIE COUNTY
SARAH R VAN CAMP
REGISTER OF DEEDS

Fee Amount: $30.00
Total Pages: 7

| Document Number | Document Title |
|---|---|

Form Approved - OMB No. 0560-0237

**Name & Return Address:**
FARM SERVICE AGENCY
603A Lakeland Rd.
Shawano, WI 54166

NOTE: *The following statement is made in accordance with the Privacy Act of 1974 (5 U.S.C. 552a - as amended). The authority for requesting the information identified on this form is the Consolidated Farm and Rural Development Act, as amended (7 U.S.C. 1921 et seq.). The information will be used to determine eligibility and feasibility for loans and loan guarantees, and servicing of loans and loan guarantees. The information collected on this form may be disclosed to other Federal, State, and local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in the applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information may result in a denial for loans and loan guarantees, and servicing of loans and loan guarantees. The provisions of criminal and civil fraud, privacy, and other statutes may be applicable to the information provided.*
*According to the Paperwork Reduction to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0560-0237. The time required to complete this information collection is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. RETURN THIS COMPLETED FORM TO YOUR COUNTY FSA OFFICE.*



**Recording Area**
**Parcel Identification Number (PIN):**
160025100, 160025200,
160024700, 160027102, 160025000

THIS MORTGAGE **("instrument")** is made **JUNE 9, 2016**. The mortgagor is **SCOTT PAUL CARTWRIGHT and JACQUELINE JEAN CARTWRIGHT, husband and wife as survivorship marital property ("Borrower")** whose mailing address is W10460 Kickhafer Rd., New London WI 54961. This instrument is given to the United States of America, acting through the Farm Service Agency, United States Department of Agriculture **("Government")** located at 603A Lakeland Rd., Shawano, WI 54166.

This instrument secures the following promissory notes, assumption agreements and/or shared appreciation agreements (collectively called **"Note"**), which have been executed or assumed by the borrower, unless otherwise noted, are payable to the Government, and authorize acceleration of the entire debt upon any default:

| Date of Instrument | Principal Amount | Annual Rate of Interest |
|---|---|---|
| 06/09/2016 | $ 50,000.00 | 2.250% |
| 06/29/2015 | $266,753.78 | 1.125% |

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be increased as provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all proceeds for the loan or loans evidenced by the above note.

This instrument secures to the Government: (1) payment of the note and all extensions, renewals, and modifications thereof; (2) recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U.S.C. § 2001; (3) payment of all advances and expenditures, with interest, made by the Government, and (4) the obligations and covenants of Borrower set forth in this instrument, the Note, and any other loan agreements.

*This Instrument Was Drafted By The United States Department Of Agriculture, Farm Service Agency*

Initial(s) S.P.C. Date 6/9/16

FSA 2029 WI (07-15-14) Page 1 of 6

*The U.S. Department of Agriculture (USDA) prohibits discrimination against its customers, employees, and applicants for employment on the basis of race, color, national origin, age, disability, sex, gender identity, religion, reprisal, and where applicable, political beliefs, marital status, familial or parental status, sexual orientation, or all or part of an individual's income is derived from any public assistance program, or protected genetic information in employment or in any program or activity conducted or funded by the Department. (Not all prohibited bases will apply to all programs and or employment activities.) Persons with disabilities, who wish to file a program complaint, write to the address below or if you require alternative means of communication for program information (e.g., Braille, large print, audiotape, etc.) please contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). Individuals who are deaf, hard of hearing, or have speech disabilities and wish to file either an EEO or program complaint, please contact USDA through the Federal Relay Service at (800) 877-8339 or (800) 845-6136 (in Spanish).*

*If you wish to file a Civil Rights program complaint of discrimination, complete the USDA Program Discrimination Complaint Form, found online at http://www.ascr.usda.gov/complaint_filing_cust.html, or at any USDA office, or call (866) 632-9992 to request the form. You may also write a letter containing all of the information requested in the form. Send your completed complaint form or letter by mail to U.S. Department of Agriculture, Director, Office of Adjudication, 1400 Independence Avenue, S.W., Washington, D.C. 20250-9410, by fax (202) 690-7442 or email at program.intake@usda.gov. USDA is an equal opportunity provider and employer.*

**Exhibit I**

Mortgage for Wisconsin (Continued)

In consideration of any loan made by the Government under the Consolidated Farm and Rural Development Act, 7 U.S.C. §1921 et seq. as evidenced by the Note, Borrower irrevocably mortgages, grants and conveys to the Government the following described property situated in the State of Wisconsin, County of OUTAGAMIE:

 *SEE ATTACHED

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereof, revenues and income therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property"). This instrument constitutes a security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions that are now or hereafter included in, affixed, or attached to "**the property**."

Borrower COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record. Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property.

UNIFORM COVENANTS. Borrower COVENANTS AND AGREES as follows:

1.      **Payment**. Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.

2.      **Fees**. Borrower shall pay to the Government such fees and other changes that may now or later be required by Government regulations.

3.      **Application of payments**. Unless applicable law or Government's regulations provide otherwise, all payments received by Government shall be applied in the following order of priority: (a) to advances made under this instrument; (b) to accrued interest due under the note; (c) to principal due under the note; (d) to late charges and other fees and charges.

4.      **Taxes, liens, etc.** Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.

5.      **Assignment.** Borrower grants and assigns as additional security all the right, title and interest in: (a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation; (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements. Borrower warrants the validity and enforceability of this assignment.

Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full. Such money may, at the option of the Government, be applied on the debt whether due or not. The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government. In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

Initial(s) _SPC_  Date _6/9/16_                                    **FSA 2029 WI** (07-15-14) Page 2 of 6

Mortgage for Wisconsin (Continued)

Borrower will promptly provide the Government with copies of all existing and future leases. Borrower warrants that as of the date of executing this instrument no default exists under existing leases. Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law. Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents. Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss or damage that the Government may incur as a consequence of this assignment.

6.      **Insurance**.  Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government. If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U.S.C. §4001 et seq. and Government regulations. All insurance policies and renewals shall include a standard mortgagee clause.

7.      **Advances by Government**. The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements. All such advances shall bear interest at the same rate as the note which has the highest interest rate. All such advances, with interest, shall be immediately due and payable by Borrower to the Government without demand. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any secured debt to the Government, in any order the Government determines.

8.      **Protection of lien**. Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement or compliance with this instrument and the Note. Such expenses include, but are not limited to: costs of evidence of title to, and survey of, the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

9.      **Authorized purposes**.  Borrower shall use the loan evidenced by the Note solely for purposes authorized by the Government.

10.     **Repair and operation of property**. Borrower shall: (a) maintain improvements in good repair; (b) make repairs required by the Government; (c) comply with all farm conservation practices and farm management plans required by the Government; and (d) operate the property in a good and husbandlike manner.  Borrower shall not (e) abandon the property; (f) cause or permit waste, lessening or impairment of the property; or (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.

11.     **Legal compliance**. Borrower shall comply with all laws, ordinances, and regulations affecting the property.

12.     **Transfer or encumbrance of property**. Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government. The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

13.     **Inspection**. At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

14.     **Hazardous substances**. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property. The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property. Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property. Borrower shall not do, nor allow anyone else to do, anything affecting the property that is in

Initial(s) _SPC_  Date _6/9/16_                                        **FSA 2029 WI** (07-15-14) Page 3 of 6



Mortgage for Wisconsin (Continued)

violation of any federal, state, or local environmental law or regulation. Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations. As used in this paragraph, "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

15.     **Adjustment; release; waiver; forbearance**. In accordance with Government regulations, the Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on the

note, (d) release any party who is liable under the note from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing. HOWEVER, any forbearance by the Government - whether once or often - in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

16.     **Graduation**. If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17.     **Forfeiture**. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this instrument or the Government's security interest. Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18.     **False statement**. Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19.     **Cross Collateralization**. Default under this instrument shall constitute default under any other security instrument held by the Government and executed by Borrower. Default under any other such security instrument shall constitute default under this instrument.

20.     **Highly erodible land; wetlands**. Any loan secured by this instrument will be in default if Borrower uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

21.     **Non-discrimination**. If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

Initial(s) _SPC_ Date _6/9/16_                    FSA 2029 WI (07-15-14) Page 4 of 6

Mortgage for Wisconsin (Continued)

22.    **Notices**. Notices given under this instrument shall be sent by certified mail unless otherwise required by law. Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

23.    **Governing law; severability**. This instrument shall be governed by Federal law. If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application. The provisions of this instrument are severable. This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise, and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

24.    **Successors and assigns; joint and several covenants**. The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower.  Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this instrument but does not execute the Note: (a) is co-signing this instrument only to mortgage, grant and convey that Borrower interest in the property under this instrument; (b) is not personally obligated to pay

the sums secured by this instrument; and (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25.    **No merger**. If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing. If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not be affected by such conveyance.

26.    **Time is of the essence**. Time is of the essence in the Borrower's performance of all duties and obligations under this instrument.

NON-UNIFORM COVENANTS. Borrower further COVENANTS AND AGREES as follows:

27.    **Default; death; incompetence; bankruptcy**. Should default occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the Borrower die or be declared incompetent, or should the Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any debt to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of, and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument and sell the property as prescribed by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

28.    **State law.** Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of any action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

Initial(s) _SPC_  Date _6/9/16_                                  **FSA 2029 WI** (07-15-14) Page 5 of 6

Mortgage for Wisconsin (Continued)

29.     **Assignment of leases and rents**. Borrower agrees that the assignment of leases and rents in this instrument is immediately effective on the recording of this instrument. Upon default, the Borrower will receive any rents in trust for the Government, and Borrower will not commingle the rents with any other funds. Any amounts collected shall be applied at the Government's discretion first to costs of managing, protecting and preserving the property, and to any other necessary related expenses. Any remaining amounts shall be applied to reduce the debt evidenced by the note(s). Borrower agrees that the Government may demand that Borrower and Borrower's tenants pay all rents due or to become due directly to the Government if the Borrower defaults and the Government notifies Borrower of the default. Upon such notice, Borrower will endorse and deliver to the Government any payments of rents. If the Borrower becomes subject to a bankruptcy, then Borrower agrees that the Government is entitled to receive relief from the automatic stay in bankruptcy for the purpose of enforcing this assignment.

30.     **Application of foreclosure proceeds**. The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all other debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other debt of Borrower to the Government, and (f) any balance to Borrower. If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government in the order prescribed above.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

_____
SCOTT PAUL CARTWRIGHT

_____
JACQUELINE JEAN CARTWRIGHT

STATE OF WISCONSIN
COUNTY OF SHAWANO } ss.

On this 9th day of JUNE 2016, before me, the undersigned, personally appeared Scott Paul Cartwright and Jacqueline Jean Cartwright, to be known to me to be same whose name is subscribed, to the foregoing instrument, and acknowledged that he/she signed and delivered the instrument as his/her free and voluntary acts, for the uses and purposes set forth.

My commission expires:   09/11/2016

_____
LYNN M. SHALLOW                    NOTARY PUBLIC

Initial(s) _SPC_ Date _6/9/16_

CARTWRIGHT LEGAL DESCRIPTION

All of the Mortgagor's rights, title and interest in the following described property under and by virtue of that certain instrument entitled LAND CONTRACT, Dated January 2, 2007, Recorded on January 7, 2008, in document #1778823, in Outagamie County, Wisconsin records.

The Southeast ¼ of the Northwest ¼ and the Southwest ¼ of the Northeast ¼ of Section 17, Township 23 North, Range 15 East, town of maple Creek, Outagamie County, Wisconsin. AND

Lot 2 of CSM No. 3290 recorded in the office of the Register of Deeds for Outagamie County, Wisconsin on September 17, 1998, in Volume 17 of CSM's Page 3290, as Document No. 1290362, being part of the Southeast ¼ of the Northeast ¼ of Section 18, Township 23 North, Range 15 East, Town of Maple Creek Outagamie County, Wisconsin. Mortgagor(s) covenant(s) and agree(s) that default by Mortgagor(s) under certain instrument entitled LAND CONTRACT which instrument is more particularly described above, shall also constitute default under this mortgage.

All of the Mortgagor's rights, title and interest in the following described property under and by virtue of that certain instrument entitled LAND CONTRACT, Dated January 2, 2007, and Recorded on January 7, 2008, in document #1778822, in Outagamie County, Wisconsin records.

Lots 1 & 2 CSM No. 5944, recorded in the office of the Register of Deeds for Outagamie County, Wisconsin on February 24, 2009, in Volume 34 of CSM's Page 5944, as Document No. 1823798, being part of the Northwest ¼ of the Northwest ¼ of Section 17, Township 23 North, Range 15 East, Town of Maple Creek, Outagamie County, Wisconsin. AND

The Southwest ¼ of the Northwest ¼ of Section 17, Township 23 North, Range 15 East, Town of Maple Creek, Outagamie County, Wisconsin. Mortgagor(s) covenant(s) and agree(s) that default by Mortgagor(s) under certain instrument entitled LAND CONTRACT which instrument is more particularly described above, shall also constitute default under this mortgage.

EPC  6/9/16
GGC



USDA United States Department of Agriculture

Farm Production and Conservation

Farm Service Agency

Wisconsin State Office
8030 Excelsior Drive, Suite 100
Madison, WI 53717
Ph.: 608-662-4422
Fax: 855-758-0755

Certified Mail Return Receipt Requested & Regular
CM: 7016-1370-0000-8123-0726

## NOTICE OF ACCELERATION OF YOUR DEBT TO THE FARM SERVICE AGENCY AND DEMAND FOR PAYMENT OF THAT DEBT

Scott P. & Jacqueline Cartwright
W10460 Kickhafer Road
New London, WI 54961

January 29, 2019

Dear Mr. & Mrs. Cartwright:

PLEASE NOTE that the entire indebtedness due on the promissory notes and/or assumption agreements which evidence the loans received by you from the United States of America, acting through the Farm Service Agency, United States Department of Agriculture is now declared immediately due and payable. They are described as follows:

| Debt Instrument | Date of Instrument | Original Amount |
|---|---|---|
| Promissory Note | June 29, 2015 | $266,753.78 |
| Promissory Note. | June 9, 2016 | $50,000 |

The promissory notes or assumption agreements are secured by real estate mortgages, deeds of trust, security agreement, and financing statements, etc., described and perfected as follows:

| Security Instrument | Date | Recording Office | Recording Information |
|---|---|---|---|
| Financing Statement | September 6, 2012 | WDFI | 120011671925 |
| Continuation Statement | August 1, 2017 | WDFI | 170010454519 |
| Mortgage | September 12, 2012 | Outagamie ROD | 1958891 |
| Mortgage | June 29, 2015 | Outagamie ROD | 2048073 |
| Mortgage | June 9, 2016 | Outagamie ROD | 2075535 |

This acceleration of your indebtedness is made in accordance with the authority granted in the above-described instruments. **The reasons for the acceleration of your indebtedness includes your monetary default.**

The indebtedness due is $280,114.22 unpaid principal, and $5,886.30 interest, as of today, plus additional interest accruing at the rate of $10.0729 per day thereafter, plus any advances made by the United States for the protection of its security and interest accruing on any such advances and any shared appreciation.

USDA is an equal opportunity employer, provider and lender.

# Exhibit J

Unless full payment of your indebtedness is received made by one of the methods described below within 30 days from the date of this letter, the United States will foreclose the above described security instruments and pursue any other available remedies.

If your account is referred to the Department of Justice for foreclosure and/or other collection activity after foreclosure, such as a deficiency judgment or enforcing a judgment lien, attorney's fees may be added to your debt as well as a Department of Justice fee of 3 percent.

Full payment may be made in any of the following ways:

A) CASH

Payment should be made by cashier's check, certified check, or postal money order payable to the Farm Service Agency and delivered to FSA at the above listed address.

If you submit to the UNITED STATES any payment insufficient to pay the account in full or insufficient to comply with any arrangements agreed to between the Farm Service Agency and yourself, that payment WILL NOT CANCEL the effect of this notice. If such insufficient payments are received and credited to your account, no waiver or prejudice of any rights which the UNITED STATES may have for breach of any promissory note or covenant in the security instruments will result and the Farm Service Agency may proceed as though no such payment had been made.

B) TRANSFER AND ASSUMPTION

You may transfer the collateral for your loans to someone who is willing and able to assume the debt. Contact FSA immediately if you are interested in this.

C) SALE

You may sell the collateral for your loans for its market value and send the proceeds to FSA or to other creditors with liens prior to FSA's lien. Contact FSA immediately if you are interested in this.

If you fail to comply with the requirements outlined in this notice within the next 30 days, the United States plans to proceed with foreclosure/liquidation.

USDA is an equal opportunity employer, provider and lender.

YOU DO NOT HAVE ANY RIGHT TO APPEAL THIS DECISION TO ACCELERATE
YOUR FSA DEBTS.

**UNITED STATES OF AMERICA**

**BY:** _____

Tyler Radke
District Director
Farm Service Agency
United States Department of Agriculture

TR:dl

cc:  Farm Loan Chief, FSA/STO
     Farm Loan Specialist, FSA/Manitowoc County USDA Service Center
     Farm Loan Manager, FSA/Shawano County USDA Service Center

Notice to Customers Presenting Checks

When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. For inquiries, please contact your local office.

Privacy Act – A Privacy Act Statement required by 5.U.S.C. § 552a(e)(3) stating our authority for soliciting and collecting the information from your check, and explaining the purposes and routine uses which will be made of your check information, is available from our internet site at (http://www.fms.treas.gov/otcnet/index.html ), or call toll free at (1-866-945-7920) to obtain a copy by mail. Furnishing the check information is voluntary, but a decision not to do so may require you to make payment by some other method..

USDA is an equal opportunity employer, provider and lender.

# USPS Tracking®  FAQs    (https://www.usps.com/faqs/uspstracking-faqs.htm)

## Track Another Package ✚

**Tracking Number:** 70161370000081230726                    Remove

Your item was delivered at 3:27 pm on February 7, 2019 in NEW LONDON, WI 54961.

## Delivered

February 7, 2019 at 3:27 pm
Delivered
NEW LONDON, WI 54961

**Get Updates**

Feedback

---

**Text & Email Updates**

---

**Tracking History**

---

**Product Information**

---

### See Less

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FSA-2561**
(11-04-08)

**U.S. DEPARTMENT OF AGRICULTURE**
Farm Service Agency

Position 2

# STATEMENT OF ACCOUNT

Check here ☑ if FSA-2561A (Continuation) is attached.

**1. Full Case Number**

58-044-0562

**2. To (FSA requesting office)**
WISCONSIN STATE FSA OFFICE 58-300

**3. This is to certify that:**

**A. Name(s)**

SCOTT P CARTWRIGHT                    and                    of

**B. Address**

is (are) indebted to the United States of America as reflected by the following statement of account:

| 4. Transactions Have Been Recorded Through | | 5. Interest has been accrued through (Show date) | 6. Type of Statement (Check Appropriate Box) |
|---|---|---|---|
| **A. Charges (Show date)** 06/09/2016 | **B. Credits (Show date)** 10/23/2018 | 02/23/2019 | ☑ A. Status by Loan Type / B. Advances in Detail / C. Detail Status of Individual Accounts |

| 7. DATE | 8. LOAN CODE | | | | 9. LOAN ADVANCES AND OTHER CHARGES | 10. PAYMENTS AND CREDITS | | 11. UNPAID BALANCES | | 12. DAILY INTEREST ACCRUAL |
|---|---|---|---|---|---|---|---|---|---|---|
| | A. KIND | B. FUND | C. INTEREST RATE | D. LOAN NO. | | A. INTEREST | B. PRINCIPAL | A. INTEREST | B. PRINCIPAL | |
| | | | | | | NOTE | ACCOUNT | | | |
| 06/29/15 | 01 | 44 | 01.1250 | 02 | 266,753.78 | | | | | |
| TOTAL | 01 | 44 | 01.1250 | 02 | 266,753.78 | 5,742.67 | 33,337.33 | 4,318.82 | 233,416.45 | 7.1943 |
| | | | | | | NOTE | ACCOUNT | | | |
| 06/09/16 | 01 | 44 | 02.2500 | 03 | 50,000.00 | | | | | |
| TOTAL | 01 | 4 | 02.2500 | 03 | 50,000.00 | 1,078.77 | 3,302.23 | 1,819.30 | 46,697.77 | 2.8786 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| **13. TOTALS:** | | | | | 316,753.78 | 6,821.44 | 36,639.56 | 6,138.12 | 280,114.22 | 10.0729 |

**14. Name of Authorized Official**
LAWRENCE MULLEN

**15. Signature of Authorized Official**
Lawrence Mullen

**16. Title of Authorized Official**
ACCOUNTING TECHNICIAN

**17. Date of Certification**
02/28/2019

The U.S. Department of Agriculture (USDA) prohibits discrimination in all of its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, political beliefs, genetic information, reprisal, or because all or part of an individual's income is derived from any public assistance program. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write to USDA, Assistant Secretary for Civil Rights, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue, S.W., Stop 9410, Washington, DC 20250-9410, or call toll-free at (866) 632-9992 (English) or (800) 877-8339 (TDD) or (866) 377-8642 (English Federal-relay) or (800) 845-6136 (Spanish Federal-relay). USDA is an equal opportunity provider and employer.

**Exhibit K**

State Bar of Wisconsin Form 11-2003
# LAND CONTRACT
(TO BE USED FOR NON-CONSUMER ACT TRANSACTIONS)
(HOME – OUTBUILDINGS – FARMLAND)
Document Name

Document Number

1778822

Recorded
JAN. 07, 2008 AT 09:02AM
OUTAGAMIE COUNTY
JANICE FLENZ
REGISTER OF DEEDS
Fee Amount:      $17.00
Transfer Fee:   $765.00

**CONTRACT**, by and between  **Russell W. Cartwright and Carol A. Cartwright a/k/a Carol Cartwright, husband and wife, as survivorship marital property**
("Vendor," whether one or more), and  **Scott P. Cartwright**

("Purchaser," whether one or more).

Vendor sells and agrees to convey to Purchaser, upon the prompt and full performance of this Contract by Purchaser, the following real estate, together with the rents, profits, fixtures and other appurtenant interests ("Property"), in  **Outagamie**                  County, State of Wisconsin:
**The Northwest ¼ of the Northwest ¼ and the Southwest ¼ of the Northwest ¼, of Section 17, Township 23 North, Range 15 East, Town of Maple Creek, Outagamie County, Wisconsin.**
**Land Contract Vendors do hereby reserve a life estate use in the homestead property, all provided that the Land Contract Purchaser pay all real estate taxes, repairs and maintenance, utility costs, and costs of fire and extended insurance coverage to include liability insurance.**

Of the purchase price of $255,000.00, $117,500.00 is allocated to the value of the home and approximately 2 acres underlying the same; farm outbuildings at $40,000.00, balance of purchase price attributed to acreage.

Purchaser agrees to purchase the Property and to pay to Vendor at  **W10460 Kickhafer Road, New London, WI  54961**
the sum of $ **255,000.00**                        in the following manner:

(a)   $ **0.00**                          at the execution of this Contract; and

(b)   the balance of $ **255,000.00**                   , together with interest from the date hereof on the balance
      outstanding from time to time at the rate of  **7.75**    % per annum until paid in full as follows:
      This Land Contract is payable, by annual payments, based upon a 20 year amortization, initial amortization at 7.75%, resulting in $25,491.01 per year as payments of principal and interest, with the first principal and interest payment to be made January 1, 2008, and subsequent payments on the first day of each year thereafter.
      Provided that the interest shall be adjusted, after the first 5 years, with an interest adjustment then effective years 6 thru 10; an interest rate adjustment in effect for years 11 thru 15; an interest rate adjustment in effect for years 16 thru 20.  The amount of interest payable, during each of these five year time periods shall be as mutually agreed upon between the Vendor and Purchaser.

provided the entire outstanding balance shall be paid in full on or before  **20 years from Land Contract date**  ("Maturity Date"). Payments shall be applied first to interest on the unpaid balance at the rate specified and then to principal.

## CHOOSE ONE OF THE FOLLOWING OPTIONS; IF NO OPTION IS CHOSEN, OPTION A SHALL APPLY:

☒  A.   Any amount may be prepaid without premium or fee upon principal at any time.

☐  B.   Any amount may be prepaid without premium or fee upon principal at any time after_____.

☐  C.   There may be no prepayment of principal without written permission of Vendor.

Recording Area

Name and Return Address
**Attorney Charles J. Hartzheim**
**Herrling Clark Law Firm, Ltd.**
**P. O. Box 225**
**New London, WI  54961-0225**

160-025000 & 160-025100
Parcel Identification Number (PIN)

This  **is**    homestead property.
     (is) (is not)

This  **is**    a purchase money mortgage.
     (is) (is not)

State Bar Form 11-Page 1

**Exhibit L**

**CHOOSE ONE OF THE FOLLOWING OPTIONS; IF NEITHER IS CHOSEN, OPTION A SHALL APPLY:**

☐ A.  Any prepayment shall be applied to principal in the inverse order of maturity and shall not delay the due dates or change the amount of the remaining payments until the unpaid balance of principal and interest is paid in full.

☒ B.  In the event of any prepayment, this Contract shall not be treated as in default with respect to payment so long as the unpaid balance of principal and interest (and in such case accruing interest from month to month shall be treated as unpaid prinicpal) is less than the amount that said indebtedness would have been had the monthly payments been made as specified above; provided that monthly payments shall continue in the event of credit of any proceeds of insurance or condemnation, the condemned premises being thereafter excluded from this Contract.

Purchaser shall pay prior to delinquency all taxes and assessments levied on the Property at the time of the execution of this Contract and thereafter, and deliver to Vendor on demand receipts showing such payment.

Purchaser shall keep the improvements on the Property insured against loss or damage occasioned by fire, extended coverage perils and such other hazards as Vendor may require, without co-insurance, through insurers approved by Vendor, in the amount of the full replacement value of the improvements on the Property. Purchaser shall pay the insurance premiums when due. The policies shall contain the standard clause in favor of Vendor's interest, and evidence of such policies covering the Property shall be provided to Vendor. Purchaser shall promptly give notice of loss to insurance companies and Vendor. Unless Purchaser and Vendor otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, provided Vendor deems the restoration or repair to be economically feasible.

☐  **Purchaser is required to pay Vendor amounts sufficient to pay reasonably anticipated taxes, assessments, and insurance premiums as part of Purchaser's regular payments [CHECK BOX AT LEFT IF APPLICABLE].**

Purchaser shall not commit waste nor allow waste to be committed on the Property, keep the Property in good tenentable condition and repair, and free from liens superior to the lien of this Contract, and comply with all laws, ordinances and regulations affecting the Property. If a repair required of Purchaser relates to an insured casualty, Purchaser shall not be responsible for performing such repair if Vendor does not make available to Purchaser the insurance proceeds therefor.

Vendor agrees that if the purchase price with interest is fully paid and all conditions fully performed as specified herein, Vendor will execute and deliver to Purchaser a Warranty Deed in fee simple of the Property, free and clear of all liens and encumbrances, except those created by the act or default of Purchaser, and:

**CHOOSE ONE OF THE FOLLOWING OPTIONS; IF NO OPTION IS CHOSEN, OPTION A SHALL APPLY:**

☐ A.  Purchaser states that Purchaser is satisfied with the title as shown by the title evidence submitted to Purchaser for examination, at the time of execution of this Contract.

☐ B.  Purchaser states that the following exceptions set forth in the title evidence submitted to Purchaser for examination, at the time of execution of this Contract, are unsatisfactory to Purchaser:_____

_____

☒ C.  No title evidence was provided prior to execution of this Contract.

**CHOOSE ONE OF THE FOLLOWING OPTIONS; IF NEITHER IS CHOSEN, OPTION A SHALL APPLY:**

☒ A.   Purchaser agrees to pay the cost of future title evidence.

☐ B.   Vendor agrees to pay the cost of future title evidence.

Purchaser shall be entitled to take possession of the Property on **January 1, 2007**

Time is of the essence as to all provisions hereunder.

Purchaser agrees that in the event of a default in the payment of principal or interest which continues for a period of **5** days following the due date or a default in performance of any other obligation of Purchaser which continues for a period of **25** days following written notice thereof by Vendor (delivered personally or mailed by certified mail), the entire outstanding balance under this contract shall become immediately due and payable at Vendor's option and without notice (which Purchaser hereby waives), and Vendor may singly, alternatively or in combination: (i) terminate this Contract and either recover the Property through strict foreclosure or have the Property sold by foreclosure sale; in either event, with a period of redemption, in the court's discretion, to be conditioned on full payment of the entire outstanding balance, with interest thereon from the date of default and other amounts due hereunder (failing which all amounts previously paid by Purchaser shall be forfeited as liquidated damages for failure to fulfill this Contract and as rental for the Property); (ii) sue for specific performance of this Contract; (iii) sue for the unpaid purchase price or any portion thereof; (iv) declare this Contract at an end and remove this Contract as a cloud on title in a quiet-title action if the equitable interest of Purchaser is insignificant; (v) have Purchaser ejected from possession of the Property and have a receiver appointed to collect any rents, issues or profits; or (vi) pursue any other remedy available in law or equity. An election of any of the foregoing remedies shall only be binding on Vendor if and when pursued in litigation. All costs and expenses including reasonable attorneys fees of Vendor incurred to pursue any remedy hereunder to the extent not prohibited by law and expenses of title evidence shall be paid by Purchaser and included in any judgment. The parties agree that Vendor shall have the options set forth in this paragraph available to exercise in Vendor's sole discretion.

Following any default in payment, interest shall accrue at the rate of **8** % per annum on the entire amount in default (which shall include, without limitation, delinquent interest and, upon acceleration or maturity, the entire principal balance).

Vendor may waive any default without waiving any other subsequent or prior default of Purchaser.

Purchaser may not transfer, sell or convey any legal or equitable interest in the Property, including but not limited to a lease for a term greater than one year, without the prior written consent of Vendor unless the outstanding balance payable under this Contract is paid in full. In the event of any such transfer, sale or conveyance without Vendor's written consent, the entire outstanding balance payable under this Contract shall become immediately due and payable in full at Vendor's option without notice.

Vendor may mortgage the Property, including the continuation of any mortgage in force on the date of this Contract, provided Vendor shall make timely payment of all amounts due under any mortgage, and the total due under such mortgages shall not at any time exceed the then remaining principal balance under this Contract. If Vendor defaults under such mortgages and Purchaser is not in default hereunder, Purchaser may make payments directly to Vendor's mortgagee and such payments will be credited as payments hereunder.

All terms of this Contract shall be binding upon and inure to the benefit of the heirs, legal representatives, successors and assigns of Vendor and Purchaser.

Dated Jan. 2, 2007 effective January 1, 2007 .

VENDOR:                                        PURCHASER:

_Russell W. Cartwright_ (signature)     (SEAL)     _Scott P. Cartwright_ (signature)     (SEAL)
* Russell W. Cartwright                            * Scott P. Cartwright
_Carol A. Cartwright_ (signature)       (SEAL)     _____     (SEAL)
* Carol A. Cartwright                              *


### AUTHENTICATION

Signature(s) __Russell W. Cartwright, Carol A. Cartwright__
__and Scott P. Cartwright__

authenticated on __January 2, 2007__

_____

* Charles J. Hartzheim

  TITLE: MEMBER STATE BAR OF WISCONSIN
     (If not, _____
     authorized by Wis. Stat. § 706.06 )   .


THIS INSTRUMENT DRAFTED BY:
__Attorney Charles J. Hartzheim, Herrling Clark Law Firm__
__P. O. Box 225, New London, WI  54961__


### ACKNOWLEDGMENT

STATE OF _____ )
                               ) ss.
_____ COUNTY )

Personally came before me on _____ ,
the above-named _____

_____

to me known to be the person(s) who executed the foregoing
instrument and acknowledged the same.

_____

* _____
Notary Public, State of _____
My commission (is permanent) (expires: _____ )

(Signatures may be authenticated or acknowledged.  Both are not necessary.)
NOTE: THIS IS A STANDARD FORM.  ANY MODIFICATION TO THIS FORM SHOULD BE CLEARLY IDENTIFIED.
LAND CONTRACT                        ©2003 STATE BAR OF WISCONSIN                    FORM NO. 11-2003
*Type name below signatures.

INFO-PRO™ Legal Forms · (800)655-2021 · infoproforms.com

State Bar Form 11-Page 4

# Real Estate Agreement

AGREEMENT entered into by and between Scott P. Cartwright, hereinafter called "Scott," and Russell W. Cartwright and Carol A. Cartwright, hereinafter called "Russ/Carol".

Scott is the son of Russ/Carol.

Scott, in the year 2007, purchased from Russ/Carol real estate in the Town of Maple Creek, Outagamie County. The description of that real estate is:

The Northwest ¼ of the Northwest ¼ and the Southwest ¼ of the Northwest ¼, of Section 17, Township 23 North, Range 15 East, Town of Maple Creek, Outagamie County, Wisconsin.

Scott and Russ/Carol agree that in the future, if Russ/Carol desire a parcel of real estate on which to construct a home or to move a home thereon, Scott shall be legally obligated to give them the real estate, up to approximately 2 to 3 acres. The location of the real estate shall be mutually agreed upon by Scott and Russ/Carol. Provided however that the location of the real estate, as agreed upon, shall be in such location as to minimize the costs of Russ/Carol in obtaining utilities to the property, such as electric.

There shall be no cost to Russ/Carol for the value of the land; it shall be a gift from Scott to Russ/Carol.

If Russ/Carol, in the future, desire to obtain title to the land, then any cost associated with a Plat of Survey or Certified Survey Map shall be paid as then agreed upon between Scott and Russ/Carol. If the parties cannot come to an agreement, then the cost thereof shall be split, Scott paying one-half (½) thereof and Russ/Carol paying the other one-half (½) thereof.

This Agreement shall be binding upon the heirs, successors and assigns of Scott, and this Agreement runs to and for the personal benefit of Russ/Carol. Russ/Carol do not have the right to further assign this Agreement to any third party.

Dated this 2 day of Jan. , 2008.

Scott P. Cartwright

Russell W. Cartwright

Carol A. Cartwright

1

Signatures authenticated this 2nd
day of Jan , 2008 .

Charles J. Hartzheim, Attorney
Member State Bar of Wisconsin

THIS INSTRUMENT DRAFTED BY:
Charles J. Hartzheim, Attorney
HERRLING CLARK LAW FIRM, LTD.
105 E. Waupaca Street
P. O. Box 225
New London, WI 54961-0225
Phone: (920) 982-9652
Fax: (920) 982-9658

G:\DOCS\CARTWRUS\33550\04308907.DOC – AJH

2

# LAND CONTRACT

(TO BE USED FOR NON-CONSUMER ACT TRANSACTIONS)
(FARM ACREAGE – NO HOME/NO OUTBUILDINGS)

Document Number · · Document Name

**1778823**

Recorded
JAN. 07, 2008 AT 09:04AM
OUTAGAMIE COUNTY
JANICE FLENZ
REGISTER OF DEEDS
Fee Amount: $17.00
Transfer Fee: $735.00

**CONTRACT**, by and between  Russell W. Cartwright and Carol A. Cartwright
a/k/a Carol Cartwright, husband and wife, as survivorship marital property

("Vendor," whether one or more), and  Scott P. Cartwright

("Purchaser," whether one or more).

Vendor sells and agrees to convey to Purchaser, upon the prompt and full
performance of this Contract by Purchaser, the following real estate, together
with the rents, profits, fixtures and other appurtenant interests ("Property"), in
Outagamie _____ County, State of Wisconsin:

The Southeast ¼ of the Northwest ¼ and the Southwest ¼ of the Northeast ¼, of
Section 17, Township 23 North, Range 15 East, Town of Maple Creek, Outagamie
County, Wisconsin.

Lot 2 of CSM No. 3290 recorded in the office of the Register of Deeds for
Outagamie County, Wisconsin on September 17, 1998, in Volume 17 of CSM's,
Page 3290, as Document No. 1290362, being part of the Southeast ¼ of the
Northeast ¼ of Section 18, Township 23 North, Range 15 East, Town of Maple
Creek, Outagamie County, Wisconsin.

Recording Area

Name and Return Address
Attorney Charles J. Hartzheim
Herrling Clark Law Firm, Ltd.  ENVELOPE
P. O. Box 225
New London, WI 54961-0225

160-025200, 160-024700 & 160-027102

Parcel Identification Number (PIN)

This  **is not**  homestead property.
~~(is)~~ (is not)

This  **is**  a purchase money mortgage.
(is) ~~(is not)~~

Purchaser agrees to purchase the Property and to pay to Vendor at  W10460
Kickhafer Road, New London, WI  54961

the sum of $ 245,000.00 _____ in the following manner:

(a) $ 0.00 _____ at the execution of this Contract; and

(b) the balance of $ 245,000.00 _____, together with interest from the date hereof on the balance
outstanding from time to time at the rate of 7.00 % per annum until paid in full as follows:

This Land Contract is payable, by monthly payments, based upon a 15 year amortization, initial amortization at
7.00%, resulting in $2,202.13 per month as payments of principal and interest, with the first principal and interest
payment to be made February 1, 2007, and subsequent payments on the first day of each month thereafter.

provided the entire outstanding balance shall be paid in full on or before 15 years from Land Contract date ("Maturity
Date"). Payments shall be applied first to interest on the unpaid balance at the rate specified and then to principal.

## CHOOSE ONE OF THE FOLLOWING OPTIONS; IF NO OPTION IS CHOSEN, OPTION A SHALL APPLY:

☒ A. Any amount may be prepaid without premium or fee upon principal at any time.

☐ B. Any amount may be prepaid without premium or fee upon principal at any time after _____.

☐ C. There may be no prepayment of principal without written permission of Vendor.

**Exhibit M**

**CHOOSE ONE OF THE FOLLOWING OPTIONS; IF NEITHER IS CHOSEN, OPTION A SHALL APPLY:**

☐ A.  Any prepayment shall be applied to principal in the inverse order of maturity and shall not delay the due dates or change the amount of the remaining payments until the unpaid balance of principal and interest is paid in full.

☒ B.  In the event of any prepayment, this Contract shall not be treated as in default with respect to payment so long as the unpaid balance of principal and interest (and in such case accruing interest from month to month shall be treated as unpaid prinicpal) is less than the amount that said indebtedness would have been had the monthly payments been made as specified above; provided that monthly payments shall continue in the event of credit of any proceeds of insurance or condemnation, the condemned premises being thereafter excluded from this Contract.

Purchaser shall pay prior to delinquency all taxes and assessments levied on the Property at the time of the execution of this Contract and thereafter, and deliver to Vendor on demand receipts showing such payment.

Purchaser shall keep the improvements on the Property insured against loss or damage occasioned by fire, extended coverage perils and such other hazards as Vendor may require, without co-insurance, through insurers approved by Vendor, in the amount of the full replacement value of the improvements on the Property. Purchaser shall pay the insurance premiums when due. The policies shall contain the standard clause in favor of Vendor's interest, and evidence of such policies covering the Property shall be provided to Vendor. Purchaser shall promptly give notice of loss to insurance companies and Vendor. Unless Purchaser and Vendor otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, provided Vendor deems the restoration or repair to be economically feasible.

☐  **Purchaser is required to pay Vendor amounts sufficient to pay reasonably anticipated taxes, assessments, and insurance premiums as part of Purchaser's regular payments [CHECK BOX AT LEFT IF APPLICABLE].**

Purchaser shall not commit waste nor allow waste to be committed on the Property, keep the Property in good tenentable condition and repair, and free from liens superior to the lien of this Contract, and comply with all laws, ordinances and regulations affecting the Property. If a repair required of Purchaser relates to an insured casualty, Purchaser shall not be responsible for performing such repair if Vendor does not make available to Purchaser the insurance proceeds therefor.

Vendor agrees that if the purchase price with interest is fully paid and all conditions fully performed as specified herein, Vendor will execute and deliver to Purchaser a Warranty Deed in fee simple of the Property, free and clear of all liens and encumbrances, except those created by the act or default of Purchaser, and: **Except for easements, restrictions and covenants of record.**

**CHOOSE ONE OF THE FOLLOWING OPTIONS; IF NO OPTION IS CHOSEN, OPTION A SHALL APPLY:**

☐ A.  Purchaser states that Purchaser is satisfied with the title as shown by the title evidence submitted to Purchaser for examination, at the time of execution of this Contract.

☐ B.  Purchaser states that the following exceptions set forth in the title evidence submitted to Purchaser for examination, at the time of execution of this Contract, are unsatisfactory to Purchaser: _____

_____

_____

☒ C.  No title evidence was provided prior to execution of this Contract.

State Bar Form 11-Page 2

**CHOOSE ONE OF THE FOLLOWING OPTIONS; IF NEITHER IS CHOSEN, OPTION A SHALL APPLY:**

☒ A.   Purchaser agrees to pay the cost of future title evidence.

☐ B.   Vendor agrees to pay the cost of future title evidence.

Purchaser shall be entitled to take possession of the Property on **January 1, 2007** _____.

Time is of the essence as to all provisions hereunder.

Purchaser agrees that in the event of a default in the payment of principal or interest which continues for a period of ___ **5** ___ days following the due date or a default in performance of any other obligation of Purchaser which continues for a period of ___ **25** ___ days following written notice thereof by Vendor (delivered personally or mailed by certified mail), the entire outstanding balance under this contract shall become immediately due and payable at Vendor's option and without notice (which Purchaser hereby waives), and Vendor may singly, alternatively or in combination: (i) terminate this Contract and either recover the Property through strict foreclosure or have the Property sold by foreclosure sale; in either event, with a period of redemption, in the court's discretion, to be conditioned on full payment of the entire outstanding balance, with interest thereon from the date of default and other amounts due hereunder (failing which all amounts previously paid by Purchaser shall be forfeited as liquidated damages for failure to fulfill this Contract and as rental for the Property); (ii) sue for specific performance of this Contract; (iii) sue for the unpaid purchase price or any portion thereof; (iv) declare this Contract at an end and remove this Contract as a cloud on title in a quiet-title action if the equitable interest of Purchaser is insignificant; (v) have Purchaser ejected from possession of the Property and have a receiver appointed to collect any rents, issues or profits; or (vi) pursue any other remedy available in law or equity. An election of any of the foregoing remedies shall only be binding on Vendor if and when pursued in litigation. All costs and expenses including reasonable attorneys fees of Vendor incurred to pursue any remedy hereunder to the extent not prohibited by law and expenses of title evidence shall be paid by Purchaser and included in any judgment. The parties agree that Vendor shall have the options set forth in this paragraph available to exercise in Vendor's sole discretion.

Following any default in payment, interest shall accrue at the rate of ___ **8** ___ % per annum on the entire amount in default (which shall include, without limitation, delinquent interest and, upon acceleration or maturity, the entire principal balance).

Vendor may waive any default without waiving any other subsequent or prior default of Purchaser.

Purchaser may not transfer, sell or convey any legal or equitable interest in the Property, including but not limited to a lease for a term greater than one year, without the prior written consent of Vendor unless the outstanding balance payable under this Contract is paid in full. In the event of any such transfer, sale or conveyance without Vendor's written consent, the entire outstanding balance payable under this Contract shall become immediately due and payable in full at Vendor's option without notice.

Vendor may mortgage the Property, including the continuation of any mortgage in force on the date of this Contract, provided Vendor shall make timely payment of all amounts due under any mortgage, and the total due under such mortgages shall not at any time exceed the then remaining principal balance under this Contract. If Vendor defaults under such mortgages and Purchaser is not in default hereunder, Purchaser may make payments directly to Vendor's mortgagee and such payments will be credited as payments hereunder.

All terms of this Contract shall be binding upon and inure to the benefit of the heirs, legal representatives, successors and assigns of Vendor and Purchaser.

Dated **Jan. 2, 2007 effective January __, 2007** . See language below, reference determination of interest rates in subsequent years of the Land Contract. See language below on Greenstone Financial selecting arbitrator – language incorporated into Land Contract by reference.

VENDOR:                                                     PURCHASER:

_Russell W. Cartwright_ (SEAL)            _Scott P. Cartwright_ (SEAL)
* Russell W. Cartwright                                *Scott P. Cartwright

_Carol A. Cartwright_ (SEAL)              _____ (SEAL)
* Carol A. Cartwright


### AUTHENTICATION

Signature(s) **Russell W. Cartwright, Carol A. Cartwright**
**and Scott P. Cartwright**

authenticated on **January 2, 2007**


* **Charles J. Hartzheim**

TITLE: MEMBER STATE BAR OF WISCONSIN
    (If not,
      authorized by Wis. Stat. § 706.06 )


THIS INSTRUMENT DRAFTED BY:
**Attorney Charles J. Hartzheim, Herrling Clark Law Firm**
**P. O. Box 225, New London, WI  54961-0225**

### ACKNOWLEDGMENT

STATE OF _____ )
                           ) ss.
_____ COUNTY )

Personally came before me on _____ ,
the above-named _____

to me known to be the person(s) who executed the foregoing
instrument and acknowledged the same.

_____
*
Notary Public, State of _____
My commission (is permanent) (expires: _____ )

Reference the interest rate applicable for year 6, year 11 and year 16, if the same cannot be mutually agreed upon between
Vendor and Purchaser, then the same shall be determined by a third party arbitrator.

The third party arbitrator shall be selected by Farm Credit Service/Greenstone Financial, Clintonville, Wisconsin, office or
it's successor. Cost of the arbitration shall be borne equally by the parties.

(Signatures may be authenticated or acknowledged. Both are not necessary.)
NOTE: THIS IS A STANDARD FORM. ANY MODIFICATION TO THIS FORM SHOULD BE CLEARLY IDENTIFIED.

LAND CONTRACT                          ©2003 STATE BAR OF WISCONSIN                          FORM NO. 11-2003
*Type name below signatures.                                                  INFO-PRO™ Legal Forms • (800)655-2021 • infoproforms.com

State Bar Form 11-Page 4

## LAND CONTRACT MODIFICATION AGREEMENT
(Providing for Change in Interest Rate)

This Land Contract Modification Agreement made January 1, 2012 by and between Russell W. Cartwright and Carol A. Cartwright (Vendor) and Scott P. Cartwright (Purchaser), amends and supplements the Land Contract dated January 7, 2008 and recorded as 1778823 in the office of the Register of Deeds of Outagamie County, State of Wisconsin related to the property located in Outagamie County described as follows:

> The southeast ¼ of the Northwest ¼ and the Southwest ¼ of the Northeast ¼, of Section 17, Township 23 North, Range 15 East, Town of Maple Creek, Outagamie County, Wisconsin.

> Lot 2 of CSM No. 3290 recorded in the office of the Register of Deeds for Outagamie County, Wisconsin on September 17, 1998, in Volume 17 of CSM's Page 3290, as Document No. 1290362, being part of the Southeast ¼ of the Northeast ¼ of Section 18, Township 23 North, Range 15 East, Town of Maple Creek, Outagamie County, Wisconsin.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows:

1. As of January 1, 2012, the amount payable under the Land Contract (the "Unpaid Principal Balance") is $190,750.76.
2. The Purchaser promises to pay the Unpaid Principal Balance, plus interest, to the order of the Vendor. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.5% beginning on January 1, 2012. The Purchaser promises to make monthly payments of principal and interest of $2,202.13 beginning on the 1st day of January 2012 and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.
3. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Land Contract. Except as otherwise specifically provided in this Agreement, the Land Contract will remain unchanged, and the Purchaser and Vendor will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

VENDOR:

_Russell W. Cartwright_ (signature)
Russell W. Cartwright

_Carol A. Cartwright_ (signature)
Carol A. Cartwright

PURCHASER:

_Scott P. Cartwright_ (signature)
Scott P. Cartwright

## Amortization Schedule 1

| | |
|---|---|
| Amount of Loan: | $190,750.76 |
| Initial Periods (#): | 105 |
| Annual Rate (%): | 4.50 |
| Periodic Payment: | $2,202.13 |
| Origination Date: | 12/1/2011 |
| 1st Payment Date: | 1/1/2012 |
| Payment Period: | Monthly |
| Compounding Period: | Monthly |
| Points (%): | 0.00 |
| Amortizing Method: | Normal |
| Rate Basis: | Ordinary |
| Loan Acceleration Method: | No Acceleration |
| Weekend Adjustment Method: | No Adjustment |
| Last Period Adjusting Method: | Increase Payment |
| Apply US Rule: | No |
| Last Day of Month Adjustment: | Adjust |

Prepared For:          RUSSELL CARTWRIGHT


Prepared By:       {Options}{Preferences} 3rd Page to set.

## Amortization Schedule 1

| | |
|---|---|
| Amount of Loan: | $255,000.00 |
| Initial Periods (#): | 20 |
| Annual Rate (%): | 7.75 |
| Periodic Payment: | $25,491.01 |
| Origination Date: | 1/1/2007 |
| 1st Payment Date: | 1/1/2008 |
| Payment Period: | Annually |
| Compounding Period: | Annually |
| Points (%): | 0.00 |
| Amortizing Method: | Normal |
| Rate Basis: | Ordinary |
| Loan Acceleration Method: | No Acceleration |
| Weekend Adjustment Method: | No Adjustment |
| Last Period Adjusting Method: | Increase Payment |
| Apply US Rule: | No |
| Last Day of Month Adjustment: | Adjust |

Prepared For:        Scott Cartwright

Prepared By:        Greenstone FCS

7.75 %

| #/YR | Date | Payment | Principal | Interest | Balance |
|---|---|---|---|---|---|
| Init/1 | 1/1/2007 | $0.00 | $0.00 | $0.00 | $255,000.00 |
| 1/01 | 1/1/2008 | $25,491.01 | $5,728.51 | $19,762.50 | $249,271.49 |
| 2/02 | 1/1/2009 | $25,491.01 | $6,172.47 | $19,318.54 | $243,099.02 |
| 3/03 | 1/1/2010 | $25,491.01 | $6,650.84 | $18,840.17 | $236,448.18 12-3-09 |
| 4/04 | 1/1/2011 | $25,491.01 | $7,166.28 | $18,324.73 | $229,281.90 |
| 5/05 | 1/1/2012 | $25,491.01 | $7,721.66 | $17,769.35 | $221,560.24 12-3-11 |
| 6/06 | 1/1/2013 Pd in12 | $25,491.01 | $8,320.09 | $17,170.92 | $213,240.15 |
| 7/07 | 1/1/2014 | $25,491.01 | $8,964.90 | $16,526.11 | $204,275.25 2013 |
| 8/08 | 1/1/2015 | $25,491.01 | $9,659.68 | $15,831.33 | $194,615.57 |
| 9/09 | 1/1/2016 | $25,491.01 | $10,408.30 | $15,082.71 | $184,207.27 |
| 10/10 | 1/1/2017 | $25,491.01 | $11,214.95 | $14,276.06 | $172,992.32 |
| 11/11 | 1/1/2018 | $25,491.01 | $12,084.11 | $13,406.90 | $160,908.21 |
| 12/12 | 1/1/2019 | $25,491.01 | $13,020.62 | $12,470.39 | $147,887.59 |
| 13/13 | 1/1/2020 | $25,491.01 | $14,029.72 | $11,461.29 | $133,857.87 |
| 14/14 | 1/1/2021 | $25,491.01 | $15,117.03 | $10,373.98 | $118,740.84 |
| 15/15 | 1/1/2022 | $25,491.01 | $16,288.59 | $9,202.42 | $102,452.25 |
| 16/16 | 1/1/2023 | $25,491.01 | $17,550.96 | $7,940.05 | $84,901.29 |
| 17/17 | 1/1/2024 | $25,491.01 | $18,911.16 | $6,579.85 | $65,990.13 |
| 18/18 | 1/1/2025 | $25,491.01 | $20,376.77 | $5,114.24 | $45,613.36 |
| 19/19 | 1/1/2026 | $25,491.01 | $21,955.97 | $3,535.04 | $23,657.39 |
| 20/20 | 1/1/2027 ✓ | $25,490.84 | $23,657.39 | $1,833.45 | $0.00 |
| | Annual Totals: | $509,820.03 | $255,000.00 | $254,820.03 | |
| | Running Totals: | $509,820.03 | $255,000.00 | $254,820.03 | |

$$6.8 \% = .900794 \times .37 = .33329$$
$$.963391 \times .15 = .14450$$
$$.47779$$

$$\times 83,20.$$
$$3,975$$

46% P|R X
15% F|B
37% Land

Case 1:19-cv-01000-WCG   Filed 07/15/19   Page 8 of 11   Document 1-13



| #/YR | Date | Payment | Principal | Interest | Balance |
|---|---|---|---|---|---|
| Init/1 | 12/1/2011 | $0.00 | $0.00 | $0.00 | $190,750.76 |
| | Annual Totals: | $0.00 | $0.00 | $0.00 | |
| | Running Totals: | $0.00 | $0.00 | $0.00 | |
| 1/01 | 1/1/2012 | $2,202.13 | $1,486.81 | $715.32 | $189,263.95 |
| 2/01 | 2/1/2012 | $2,202.13 | $1,492.39 | $709.74 | $187,771.56 |
| 3/01 | 3/1/2012 | $2,202.13 | $1,497.99 | $704.14 | $186,273.57 |
| 4/01 | 4/1/2012 | $2,202.13 | $1,503.60 | $698.53 | $184,769.97 |
| 5/01 | 5/1/2012 | $2,202.13 | $1,509.24 | $692.89 | $183,260.73 |
| 6/01 | 6/1/2012 | $2,202.13 | $1,514.90 | $687.23 | $181,745.83 |
| 7/01 | 7/1/2012 | $2,202.13 | $1,520.58 | $681.55 | $180,225.25 |
| 8/01 | 8/1/2012 | $2,202.13 | $1,526.29 | $675.84 | $178,698.96 |
| 9/01 | 9/1/2012 | $2,202.13 | $1,532.01 | $670.12 | $177,166.95 |
| 10/01 | 10/1/2012 | $2,202.13 | $1,537.75 | $664.38 | $175,629.20 |
| 11/01 | 11/1/2012 | $2,202.13 | $1,543.52 | $658.61 | $174,085.68 |
| 12/01 | 12/1/2012 | $2,202.13 | $1,549.31 | $652.82 | $172,536.37 |
| | Annual Totals: | $26,425.56 | $18,214.39 | $8,211.17 | |
| | Running Totals: | $26,425.56 | $18,214.39 | $8,211.17 | |
| 13/02 | 1/1/2013 | $2,202.13 | $1,555.12 | $647.01 | $170,981.25 |
| 14/02 | 2/1/2013 | $2,202.13 | $1,560.95 | $641.18 | $169,420.30 |
| 15/02 | 3/1/2013 | $2,202.13 | $1,566.80 | $635.33 | $167,853.50 |
| 16/02 | 4/1/2013 | $2,202.13 | $1,572.68 | $629.45 | $166,280.82 |
| 17/02 | 5/1/2013 | $2,202.13 | $1,578.58 | $623.55 | $164,702.24 |
| 18/02 | 6/1/2013 | $2,202.13 | $1,584.50 | $617.63 | $163,117.74 |
| 19/02 | 7/1/2013 | $2,202.13 | $1,590.44 | $611.69 | $161,527.30 |
| 20/02 | 8/1/2013 | $2,202.13 | $1,596.40 | $605.73 | $159,930.90 |
| 21/02 | 9/1/2013 | $2,202.13 | $1,602.39 | $599.74 | $158,328.51 |
| 22/02 | 10/1/2013 | $2,202.13 | $1,608.40 | $593.73 | $156,720.11 |
| 23/02 | 11/1/2013 | $2,202.13 | $1,614.43 | $587.70 | $155,105.68 |
| 24/02 | 12/1/2013 | $2,202.13 | $1,620.48 | $581.65 | $153,485.20 |
| | Annual Totals: | $26,425.56 | $19,051.17 | $7,374.39 | |
| | Running Totals: | $52,851.12 | $37,265.56 | $15,585.56 | |
| 25/03 | 1/1/2014 | $2,202.13 | $1,626.56 | $575.57 | $151,858.64 |
| 26/03 | 2/1/2014 | $2,202.13 | $1,632.66 | $569.47 | $150,225.98 |
| 27/03 | 3/1/2014 | $2,202.13 | $1,638.78 | $563.35 | $148,587.20 |
| 28/03 | 4/1/2014 | $2,202.13 | $1,644.93 | $557.20 | $146,942.27 |
| 29/03 | 5/1/2014 | $2,202.13 | $1,651.10 | $551.03 | $145,291.17 |
| 30/03 | 6/1/2014 | $2,202.13 | $1,657.29 | $544.84 | $143,633.88 |
| 31/03 | 7/1/2014 | $2,202.13 | $1,663.50 | $538.63 | $141,970.38 |
| 32/03 | 8/1/2014 | $2,202.13 | $1,669.74 | $532.39 | $140,300.64 |
| 33/03 | 9/1/2014 | $2,202.13 | $1,676.00 | $526.13 | $138,624.64 |
| 34/03 | 10/1/2014 | $2,202.13 | $1,682.29 | $519.84 | $136,942.35 |
| 35/03 | 11/1/2014 | $2,202.13 | $1,688.60 | $513.53 | $135,253.75 |
| 36/03 | 12/1/2014 | $2,202.13 | $1,694.93 | $507.20 | $133,558.82 |
| | Annual Totals: | $26,425.56 | $19,926.38 | $6,499.18 | |
| | Running Totals: | $79,276.68 | $57,191.94 | $22,084.74 | |

Prepared For: RUSSELL CARTWRIGHT     Prepared By: {Options}{Preferences} 3rd Page to set.

Case 1:19-cv-01000-WCG   Filed 07/15/19   Page 9 of 11   Document 1-13

| #/YR | Date | Payment | Principal | Interest | Balance |
|------|------|---------|-----------|----------|---------|
| 37/04 | 1/1/2015 | $2,202.13 | $1,701.28 | $500.85 | $131,857.54 |
| 38/04 | 2/1/2015 | $2,202.13 | $1,707.66 | $494.47 | $130,149.88 |
| 39/04 | 3/1/2015 | $2,202.13 | $1,714.07 | $488.06 | $128,435.81 |
| 40/04 | 4/1/2015 | $2,202.13 | $1,720.50 | $481.63 | $126,715.31 |
| 41/04 | 5/1/2015 | $2,202.13 | $1,726.95 | $475.18 | $124,988.36 |
| 42/04 | 6/1/2015 | $2,202.13 | $1,733.42 | $468.71 | $123,254.94 |
| 43/04 | 7/1/2015 | $2,202.13 | $1,739.92 | $462.21 | $121,515.02 |
| 44/04 | 8/1/2015 | $2,202.13 | $1,746.45 | $455.68 | $119,768.57 |
| 45/04 | 9/1/2015 | $2,202.13 | $1,753.00 | $449.13 | $118,015.57 |
| 46/04 | 10/1/2015 | $2,202.13 | $1,759.57 | $442.56 | $116,256.00 |
| 47/04 | 11/1/2015 | $2,202.13 | $1,766.17 | $435.96 | $114,489.83 |
| 48/04 | 12/1/2015 | $2,202.13 | $1,772.79 | $429.34 | $112,717.04 |
|  | Annual Totals: | $26,425.56 | $20,841.78 | $5,583.78 |  |
|  | Running Totals: | $105,702.24 | $78,033.72 | $27,668.52 |  |
| 49/05 | 1/1/2016 | $2,202.13 | $1,779.44 | $422.69 | $110,937.60 |
| 50/05 | 2/1/2016 | $2,202.13 | $1,786.11 | $416.02 | $109,151.49 |
| 51/05 | 3/1/2016 | $2,202.13 | $1,792.81 | $409.32 | $107,358.68 |
| 52/05 | 4/1/2016 | $2,202.13 | $1,799.53 | $402.60 | $105,559.15 |
| 53/05 | 5/1/2016 | $2,202.13 | $1,806.28 | $395.85 | $103,752.87 |
| 54/05 | 6/1/2016 | $2,202.13 | $1,813.06 | $389.07 | $101,939.81 |
| 55/05 | 7/1/2016 | $2,202.13 | $1,819.86 | $382.27 | $100,119.95 |
| 56/05 | 8/1/2016 | $2,202.13 | $1,826.68 | $375.45 | $98,293.27 |
| 57/05 | 9/1/2016 | $2,202.13 | $1,833.53 | $368.60 | $96,459.74 |
| 58/05 | 10/1/2016 | $2,202.13 | $1,840.41 | $361.72 | $94,619.33 |
| 59/05 | 11/1/2016 | $2,202.13 | $1,847.31 | $354.82 | $92,772.02 |
| 60/05 | 12/1/2016 | $2,202.13 | $1,854.23 | $347.90 | $90,917.79 |
|  | Annual Totals: | $26,425.56 | $21,799.25 | $4,626.31 |  |
|  | Running Totals: | $132,127.80 | $99,832.97 | $32,294.83 |  |
| 61/06 | 1/1/2017 | $2,202.13 | $1,861.19 | $340.94 | $89,056.60 |
| 62/06 | 2/1/2017 | $2,202.13 | $1,868.17 | $333.96 | $87,188.43 |
| 63/06 | 3/1/2017 | $2,202.13 | $1,875.17 | $326.96 | $85,313.26 |
| 64/06 | 4/1/2017 | $2,202.13 | $1,882.21 | $319.92 | $83,431.05 |
| 65/06 | 5/1/2017 | $2,202.13 | $1,889.26 | $312.87 | $81,541.79 |
| 66/06 | 6/1/2017 | $2,202.13 | $1,896.35 | $305.78 | $79,645.44 |
| 67/06 | 7/1/2017 | $2,202.13 | $1,903.46 | $298.67 | $77,741.98 |
| 68/06 | 8/1/2017 | $2,202.13 | $1,910.60 | $291.53 | $75,831.38 |
| 69/06 | 9/1/2017 | $2,202.13 | $1,917.76 | $284.37 | $73,913.62 |
| 70/06 | 10/1/2017 | $2,202.13 | $1,924.95 | $277.18 | $71,988.67 |
| 71/06 | 11/1/2017 | $2,202.13 | $1,932.17 | $269.96 | $70,056.50 |
| 72/06 | 12/1/2017 | $2,202.13 | $1,939.42 | $262.71 | $68,117.08 |
|  | Annual Totals: | $26,425.56 | $22,800.71 | $3,624.85 |  |
|  | Running Totals: | $158,553.36 | $122,633.68 | $35,919.68 |  |
| 73/07 | 1/1/2018 | $2,202.13 | $1,946.69 | $255.44 | $66,170.39 |
| 74/07 | 2/1/2018 | $2,202.13 | $1,953.99 | $248.14 | $64,216.40 |
| 75/07 | 3/1/2018 | $2,202.13 | $1,961.32 | $240.81 | $62,255.08 |

Case 1:19-cv-01000-WCG   Filed 07/15/19   Page 10 of 11   Document 1-13

| #/YR | Date | Payment | Principal | Interest | Balance |
|------|------|---------|-----------|----------|---------|
| 76/07 | 4/1/2018 | $2,202.13 | $1,968.67 | $233.46 | $60,286.41 |
| 77/07 | 5/1/2018 | $2,202.13 | $1,976.06 | $226.07 | $58,310.35 |
| 78/07 | 6/1/2018 | $2,202.13 | $1,983.47 | $218.66 | $56,326.88 |
| 79/07 | 7/1/2018 | $2,202.13 | $1,990.90 | $211.23 | $54,335.98 |
| 80/07 | 8/1/2018 | $2,202.13 | $1,998.37 | $203.76 | $52,337.61 |
| 81/07 | 9/1/2018 | $2,202.13 | $2,005.86 | $196.27 | $50,331.75 |
| 82/07 | 10/1/2018 | $2,202.13 | $2,013.39 | $188.74 | $48,318.36 |
| 83/07 | 11/1/2018 | $2,202.13 | $2,020.94 | $181.19 | $46,297.42 |
| 84/07 | 12/1/2018 | $2,202.13 | $2,028.51 | $173.62 | $44,268.91 |
| | Annual Totals: | $26,425.56 | $23,848.17 | $2,577.39 | |
| | Running Totals: | $184,978.92 | $146,481.85 | $38,497.07 | |
| 85/08 | 1/1/2019 | $2,202.13 | $2,036.12 | $166.01 | $42,232.79 |
| 86/08 | 2/1/2019 | $2,202.13 | $2,043.76 | $158.37 | $40,189.03 |
| 87/08 | 3/1/2019 | $2,202.13 | $2,051.42 | $150.71 | $38,137.61 |
| 88/08 | 4/1/2019 | $2,202.13 | $2,059.11 | $143.02 | $36,078.50 |
| 89/08 | 5/1/2019 | $2,202.13 | $2,066.84 | $135.29 | $34,011.66 |
| 90/08 | 6/1/2019 | $2,202.13 | $2,074.59 | $127.54 | $31,937.07 |
| 91/08 | 7/1/2019 | $2,202.13 | $2,082.37 | $119.76 | $29,854.70 |
| 92/08 | 8/1/2019 | $2,202.13 | $2,090.17 | $111.96 | $27,764.53 |
| 93/08 | 9/1/2019 | $2,202.13 | $2,098.01 | $104.12 | $25,666.52 |
| 94/08 | 10/1/2019 | $2,202.13 | $2,105.88 | $96.25 | $23,560.64 |
| 95/08 | 11/1/2019 | $2,202.13 | $2,113.78 | $88.35 | $21,446.86 |
| 96/08 | 12/1/2019 | $2,202.13 | $2,121.70 | $80.43 | $19,325.16 |
| | Annual Totals: | $26,425.56 | $24,943.75 | $1,481.81 | |
| | Running Totals: | $211,404.48 | $171,425.60 | $39,978.88 | |
| 97/09 | 1/1/2020 | $2,202.13 | $2,129.66 | $72.47 | $17,195.50 |
| 98/09 | 2/1/2020 | $2,202.13 | $2,137.65 | $64.48 | $15,057.85 |
| 99/09 | 3/1/2020 | $2,202.13 | $2,145.66 | $56.47 | $12,912.19 |
| 100/09 | 4/1/2020 | $2,202.13 | $2,153.71 | $48.42 | $10,758.48 |
| 101/09 | 5/1/2020 | $2,202.13 | $2,161.79 | $40.34 | $8,596.69 |
| 102/09 | 6/1/2020 | $2,202.13 | $2,169.89 | $32.24 | $6,426.80 |
| 103/09 | 7/1/2020 | $2,202.13 | $2,178.03 | $24.10 | $4,248.77 |
| 104/09 | 8/1/2020 | $2,202.13 | $2,186.20 | $15.93 | $2,062.57 |
| 105/09 | 9/1/2020 | $2,070.30 | $2,062.57 | $7.73 | $0.00 |
| | Annual Totals: | $19,687.34 | $19,325.16 | $362.18 | |
| | Running Totals: | $231,091.82 | $190,750.76 | $40,341.06 | |

Case 1:19-cv-01000-WCG   Filed 07/15/19   Page 11 of 11   Document 1-13

Sold
1834882

State Bar of Wisconsin Form 3-2003
# QUIT CLAIM DEED

Document Number | Document Name

Recorded
May 19, 2009 AT 09:20AM
OUTAGAMIE COUNTY
JANICE FLENZ
REGISTER OF DEEDS
Fee Amount:      $13.00
Total Pages 2
Fee Exempt 77.25-(13)

**THIS DEED**, made between    Scott P. Cartwright

("Grantor," whether one or more), and    Janice A. Young
formerly Janice A. Preisler

("Grantee," whether one or more).
Grantor quit claims to Grantee the following described real estate, together with the
rents, profits, fixtures and other appurtenant interests, in    Outagamie
County, State of Wisconsin ("Property") (if more space is needed, please attach addendum):

Description attached

Recording Area

Name and Return Address
Janice A. Young
N8139 Cty. Trk. F
Shiocton, WI.   54170

Part of #160025000
Parcel Identification Number (PIN)

This is no homestead property.
(is) (is not)

Dated    5 - 6 - 09

Scott P. Cartwright    (SEAL)
* Scott P. Cartwright

_____    (SEAL)
*

_____    (SEAL)
*

_____    (SEAL)
*

| **AUTHENTICATION** | **ACKNOWLEDGMENT** |
|---|---|

Signature(s)    Scott P. Cartwright

STATE OF _____ )
) ss.
_____ COUNTY )

authenticated on    5 - 6 - 09

GERALD E CONNOLLY
TITLE: MEMBER STATE BAR OF WISCONSIN
(If not, _____
authorized by Wis. Stat. § 706.06 )

Personally came before me on _____,
the above-named _____

to me known to be the person(s) who executed the foregoing
instrument and acknowledged the same.

THIS INSTRUMENT DRAFTED BY:
Janice A. Young

*_____

Notary Public, State of _____
My commission (is permanent) (expires: _____ )

(Signatures may be authenticated or acknowledged. Both are not necessary.)
NOTE: THIS IS A STANDARD FORM. ANY MODIFICATION TO THIS FORM SHOULD BE CLEARLY IDENTIFIED.
QUIT CLAIM DEED          ©2003 STATE BAR OF WISCONSIN          FORM NO. 3-2003
*Type name below signatures.                              INFO-PRO™ Legal Forms · (800)655-2021 · infoproforms.com

Addendum To Cartwright - Young Quit Claim Deed

A parcel of land located in the NW¼, NW¼, Sec. 17, T23N, R15E, described as follows: Commencing at the south west corner of said NW¼, NW¼, thence east along the south line of said quarter-quarter a distance of 21 feet, thence north to a point on the north line of said NW¼, NW¼, being 6 feet east of the north west corner of said quarter-quarter, thence west a distance of 6 feet to the north west corner of said NW¼, NW¼, thence south along the west line of said quarter-quarter to the point of beginning.

This conveyance between adjoining property owners is intended to Quiet Title in the Grantee of a parcel of land adversely possessed for many years by a fence line and said parcel has been held, occupied and cultivated openly, continuously, adversely and exclusively by Grantee and her predecessors for a period in excess of 20 years under claim of right pursuant to Sec. 893.25 Wis. Stats.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

Place an "X" in the appropriate box:   ☐ Green Bay Division   ☐ Milwaukee Division

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| **(b)**   County of Residence of First Listed Plaintiff<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:      IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |
| **(c)**   Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
       Plaintiff

☐ 2   U.S. Government
       Defendant

☐ 3   Federal Question
       *(U.S. Government Not a Party)*

☐ 4   Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)*                              and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>    & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>    Student Loans<br>    (Excl. Veterans)<br>☐ 153 Recovery of Overpayment<br>    of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>    Liability<br>☐ 320 Assault, Libel &<br>    Slander<br>☐ 330 Federal Employers'<br>    Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>    Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>    Product Liability<br>☐ 360 Other Personal<br>    Injury<br>☐ 362 Personal Injury -<br>    Med. Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury -<br>    Product Liability<br>☐ 367 Health Care/<br>    Pharmaceutical<br>    Personal Injury<br>    Product Liability<br>☐ 368 Asbestos Personal<br>    Injury Product<br>    Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>    Property Damage<br>☐ 385 Property Damage<br>    Product Liability | ☐ 625 Drug Related Seizure<br>    of Property 21 USC 881<br>☐ 690 Other<br><br>**LABOR**<br>☐ 710 Fair Labor Standards<br>    Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br>    Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc.<br>    Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>    28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>    Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/<br>    Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br>    Act<br>☐ 896 Arbitration |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>    Accommodations<br>☐ 445 Amer. w/Disabilities -<br>    Employment<br>☐ 446 Amer. w/Disabilities -<br>    Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate<br>    Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br>    Conditions of<br>    Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus -<br>    Alien Detainee<br>    (Prisoner Petition)<br>☐ 465 Other Immigration<br>    Actions | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br>    or Defendant)<br>☐ 871 IRS—Third Party<br>    26 USC 7609 | ☐ 899 Administrative Procedure<br>    Act/Review or Appeal of<br>    Agency Decision<br>☐ 950 Constitutionality of<br>    State Statutes |

## V.  ORIGIN *(Place an "X" in One Box Only)*

☐ 1   Original
       Proceeding

☐ 2   Removed from
       State Court

☐ 3   Remanded from
       Appellate Court

☐ 4   Reinstated or
       Reopened

☐ 5   Transferred from
       another district
       *(specify)*

☐ 6   Multidistrict
       Litigation

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
   UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:**   ☐ Yes   ☐ No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

I.        **(a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

          (b) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

          (c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

 II.       **Jurisdiction**.  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

III.       **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.       **Nature of Suit**.  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

V.        **Origin**.  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

VI.       **Cause of Action**.  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity**.        Example:        U.S. Civil Statute: 47 USC 553
                                                                   Brief Description: Unauthorized reception of cable service

VII.      **Requested in Complaint**.  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   **Related Cases**.  This section of the JS 44 is used to reference related pending cases if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.